WILLIAM THOMPSON v. STATE OF NEBRASKA.

FILED APRIL 3, 1895. NO. 7331.

1. **Rape:** EVIDENCE OF INABILITY OF PROSECUTRIX TO RESIST. In a prosecution for the crime of rape, where it appears from the record that the person upon whom the crime was alleged to have been committed was but sixteen years of age, had suffered a physical injury which still affected her and partially deprived her of physical strength, and was "simple minded" and acted upon by fear, *held*, that these facts must be considered by the jury in connection with all the attendant facts and circumstances of the alleged crime to determine whether the resistance to the act was such as to show non-consent of the prosecutrix and to constitute the act rape.

2. ———: SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION. The evidence examined, and *held* sufficient to sustain the verdict.

3. ———: ADMISSION OF TESTIMONY. The action of the court in admitting testimony examined, and *held* not erroneous.

4. **Criminal Law:** REVIEW: EXCEPTIONS TO ADMISSION OF TESTIMONY. Where no objections are made nor exceptions taken to the admission of testimony in the trial court, such action cannot be reviewed in this court.

5. **Assignments of Error:** INSTRUCTIONS: EVIDENCE. It was

assigned for error that the court erred in giving paragraphs 2, 3, 4, 5, 7, 8, and 10 of the instructions given by the court on its own motion, for the reason that under the evidence the court should have instructed the jury to acquit the defendant and not have submitted the question of his guilt to the jury. *Held*, That the determination that there was sufficient evidence to sustain a verdict against defendant meets this objection to the instructions.

6. Criminal Law: ASSIGNMENTS OF ERROR: REVIEW. Where in an assignment of error in a motion for new trial it is stated that the court erred in refusing to give a group of instructions, it will be examined or considered no further when it is ascertained that the refusal to give any one of the instructions was proper. (*Jenkins v. Mitchell*, 40 Neb., 664.)

ERROR to the district court for Dawson county. Tried below before HOLCOMB, J.

*Gaslin & Leek*, for plaintiff in error.

*A. S. Churchill, Attorney General*, for the state.

HARRISON, J.

During the month of September, 1894, at a term of the district court then being held in the county of Dawson, the plaintiff in error, William Thompson, was convicted of the crime of rape upon one Carrie Brockett, committed May 18, A. D. 1894. After motion for new trial filed in his behalf the same was overruled and he was sentenced to confinement in the penitentiary for the period of three years, and he has removed the case to this court to obtain a review of the proceedings during the trial in the district court.

The assignment of error which seems to be mainly relied upon by plaintiff in error is that the verdict was not sustained by sufficient evidence. In the district court the accused produced evidence of an *alibi*, but the testimony relating to this branch of the case was conflicting, and it is conceded by counsel in the brief filed that the finding of the

jury on this subject cannot be disturbed.  The testimony
discloses that the prosecutrix, Carrie Brockett, was but six-
teen years of age at the time the crime was committed;
that during the month of August, 1893, "she fell off a
horse" and broke her collar bone, and that on May 18,
1894, the date of the alleged crime, her right arm and
shoulder felt very sore and she could not and had not used
it to do much heavy work since the time it was injured.
She was at the time living with her grandmother, who
was very deaf, almost bedridden, and partially demented,
and nursing and attending her.  They lived in a house in
the town of Lexington, and were the only occupants of
the house.  A physician, who made regular professional
calls at the house to render such medical assistance or re-
lief as was needed by the grandmother, testified that the
prosecutrix was a simple-minded girl, or was mentally
weak and not possessed of the average intellect of girls of
her age, and there was testimony of one other witness
which was slightly corroborative of the physician's evi-
dence on the subject of the Brockett girl's deficiency in
mental development or capacity.

The house in which the girl and her grandmother re-
sided was, as she testifies, located about four blocks from
the court house in the city of Lexington, fronted on the
street to the south of it, and there was what they called an
east room, a west room, and a summer kitchen.  The east
room was used as a bedroom by the prosecutrix and her
grandmother.  There was an outer door to what was called
the west room, and she states that about 9 o'clock of the
evening or night of the 18th of May, 1894, some one
knocked at this door, and when she opened it she saw the
accused standing there, and he stated to her he had been
informed the house was for rent, and requested to be al-
lowed to see the rooms; that she took the lamp which was
then in the west room and conducted him through the
house, into the east, or bedroom, into the summer kitchen,

and back into the west room. She placed the lamp upon a table and stood behind a rocking chair near the table; that the accused talked about the house, and coming toward her, put his hand upon hers and then threw his arms about her waist; that she tried to get away from him and he stumbled over a box; that just then the grandmother called her, and after asking him to go home she went into the east room to see what was wanted. He followed, and she then went again into the west room after the light, and he immediately followed, closed the door between the two rooms, put his arm or arms around her and held her hands in his, pulled or led her from the door to the table on which the lamp stood, and with one hand turned the light down, and then put his right hand under her knees and carried her over next to one side of the room and threw her down. She states that during the whole time she was trying to release herself, but was unable to do so; that she did not kick or bite him or make any outcry, but struggled to get her hand loose and keep her dress down with her right hand, of which he did not have hold or control; that when he threw her down she said to him, "For God's sake let me up." She further stated that when they were on the floor he was by her side; that he obtained control of both her hands and pulled up her clothes; that she had her feet crossed and was fighting to keep him off; that he then got on top of her and put his foot between her legs and pulled them apart and accomplished his purpose, got up and sat in a chair, and, when she was getting up, caught her and pulled her down on his lap and held her there and talked to her for possibly a few moments, when she asked him to take his cap and go home and he went away. When asked if she made any outcry, and why she did not strike him, she answered that she did not because she was afraid of the accused, and she feared him because he had been drinking whiskey, and that she knew this to be so from smelling his breath. She did not tell any person of

what had occurred until the following day. The prosecu-
trix also testified that while at the house the accused told
her his name was William Thompson. It further appears
from her testimony that there was a house right across the
street and west from this one in which it was alleged the
rape was committed, and one just across the road north-
west, and another, the doctor's house, in the adjoining
block.

It seems very clear from an examination of all the testi-
mony that the finding of the jury to the extent that the
party who did the deed fully intended to employ all the
force which might become necessary to enforce his will and
pleasure, and did use all that became needful to overcome
the resistance made by the girl, was sufficiently shown by
the evidence; but it is strenuously argued that the prose-
cutrix did not resist the attacks upon her as energetically
as she should, by the use of all the natural agencies and
powers which she possessed and which might have been
employed for such purpose; that she made no outcry and
did not kick, bite, or strike the party who made the assault,
and that it must be concluded that she consented to the act
of sexual intercourse, and the finding of the jury, embracing,
as it must have done, as one of its constituents, non-consent
on her part, was wrong and not supported by the evidence.
In support of this assignment the case of *Oleson v. State*,
11 Neb., 276, is cited, in which the general doctrine on the
subject of resistance in cases of rape was announced in the
following language: "To constitute the crime of rape, where
it appears that at the time of the alleged offense the prose-
cutrix was conscious and had possession of her natural, men-
tal, and physical powers, and was not terrified by threats or
in such position that resistance would be useless, it must
appear that she resisted to the extent of her ability;" and
in the body of the opinion there appears a quotation from
the case of *People v. Morrison*, 1 Parker Crim. Rep. [N.
Y.], 625, as follows: "To constitute the crime there must

be unlawful and carnal knowledge of a woman by force, and against her will. * * * The prosecutrix, if she was the weaker party, was bound to resist to the utmost. Nature had given her hands and feet with which she could kick and strike, teeth to bite, and a voice to cry out; all these should have been put in requisition in defense of her chastity." We understand that where it is apparent from the testimony that these things were or were not done by the party upon whom it is alleged the rape was committed, it is matter of evidence to be considered by the jury in connection with all the other facts and circumstances surrounding and elements of the crime charged and from which, combined, the jurors must determine their verdict. The rule stated in *Oleson v. State, supra,* as a general rule, is a correct one and has, since the decision, been adhered to by this court, but the application of this rule must and will be governed and modified by the circumstances and facts surrounding each particular case.

In the case of *People v. Connor*, 27 N. E. Rep. [N. Y.], 252, it was decided: "The evidence showed that the defendant was a strong man of mature years, engaged in conducting an intelligence office; that the prosecutrix was a girl, only a little over sixteen, who went to his office to obtain employment; that defendant suddenly assaulted her while they were alone together in his office; that she struggled to get away from the defendant, and continually requested him to release her, and that she did not cry out because she was too frightened to do so. Held that the jury were justified in finding that she resisted to the extent of her existing ability;" and the court states in its opinion: "It is quite impossible to lay down any general rule which shall define the exact line of conduct which shall be pursued by an assaulted female under all circumstances, as the power and strength of the aggressor, and the physical and mental ability of the female to interpose resistance to the unlawful asssult, and the situation of the par-

ties, must vary in each case. What would be the proper measure of resistance in one case would be totally inapplicable to another situation accompanied by differing circumstances. One person would be paralyzed by fear and rendered voiceless and helpless by circumstances which would only inspire another with higher courage and greater strength of will to resist an assault. A young and timid child might, we think, be easily overpowered and deprived of her virtue before she had an opportunity to recover her self-possession and realize her situation, and the necessity of the exercise of the utmost physical resistance in order to preserve her virtue. It would be unreasonable to require the same measure of resistance from such a person that would be expected from an older and more experienced woman who was familiar with the springs and motives of human action and acquainted with the means necessary to be used to protect her person from violence. * * * When an assault is committed by the sudden and unexpected exercise of overpowering force upon a timid and inexperienced girl, under circumstances indicating the power and will of the aggressor to effect his object, and an intention to use any means necessary to accomplish it, it would seem to present a case for a jury to say whether the fear naturally inspired by such circumstances had not taken away or impaired the ability of the assaulted party to make effectual resistance to the assault." See, also, *People v. Dohring,* 59 N. Y., 383, where it is said: "Of course the phrase, 'the utmost resistance,' is a relative one, and the resistance may be more violent and prolonged by one woman than another, or in one set of attending physical circumstances than another. In one case, a woman may be surprised at the onset and her mouth stopped so that she cannot cry out, or her arms pinioned so that she cannot use them, or her body so pressed about and upon that she cannot struggle." The nature and the extent of the resistance which ought reasonably to be expected in each particular case must necessarily

depend very much upon the peculiar circumstances attend-
ing it; and hence it is quite impracticable to lay down any
rule upon that subject as applicable to all cases involving
the necessity of showing a reasonable resistance. (*Felton
v. State*, 39 N. E. Rep. [Ind.], 228; *Anderson v. State*,
104 Ind., 467, 474, 4 N. E. Rep., 63, and 5 N. E. Rep.,
711; *Ledley v. State*, 4 Ind., 580; *Pomeroy v. State*, 94
Ind., 96; *Commonwealth v. McDonald*, 110 Mass., 405; 2
Bishop, Criminal Law, sec. 1122.)

In the opinion in the case of *Hammond v. State*, 39
Neb., 252, POST, J., says with reference to an instruc-
tion in which it was stated: "'In order to convict, they
must find that the prosecutrix resisted to the extent of her
ability in view of the circumstances surrounding her at
the time.' Such, undoubtedly, is the general rule, but to
that rule there are some recognized exceptions, among
which is that where the female assaulted is very young and
of a mind not enlightened on the subject, the law exacts a
less determined resistance than in the case of an older and
more enlightened person. (2 Bishop, Criminal Law, 1124;
Wharton, Criminal Law, 1143.) * * * There exists
a wide difference between consent and submission, particu-
larly in the case of a female of tender years when in the
power of a strong man. Mere submission in that case is
essentially different from such a consent as the law declares
to be a justification of the act. (3 Russell, Crimes, 934.)
Coleridge, J., in *Reg. v. Day*, 9 C. & P. [Eng.], 722, thus
distinguishes: 'Every consent involves a submission; but
it by no means follows that a mere submission involves
consent. It would be too much to say that an adult sub-
mitting quietly to an outrage of this description was not
consenting. On the other hand, the mere submission of a
child when in the power of a strong man, and most proba-
bly acted upon by fear, can by no means be taken as such
consent.' "

In the case at bar the testimony disclosed that the party

alleged to have been assaulted was but sixteen years of age, and although of sufficient mental capacity to be placed and left in charge of the house and her invalid, almost helpless, and partially demented grandmother, and to do the necessary housework, that she was "simple minded," not of average mentality, and, moreover, that she was partially disabled physically, her collar bone having been broken a few months prior to the time of the assault, and that the injured portion of her body was still causing her pain and she was unable to employ the right arm in doing any heavy work; that the accused, when they were in the room alone and no one in the house who could be of any assistance to her (for the grandmother, according to her testimony, would have been powerless to aid her), pinioned her, or caught her around the body, held her hands and disabled her from offering resistance. Combining these facts with her testimony that she did struggle all she could and was afraid to offer further resistance to his efforts because he had been drinking whiskey, and other facts and circumstances connected with the alleged crime, as detailed in the evidence, we are satisfied that there were sufficient evidential facts apparent in the testimony to sustain a finding by the jury that there was no consent to the sexual intercourse by the prosecutrix during any portion of the act, and that she made such resistance as it was reasonable to expect her to do to manifest her opposition, when we consider her age, her strength physically, and the light or understanding which she possessed mentally, and all the other attendant facts and circumstances. If so, this was sufficient. (Wharton, Criminal Law, sec. 557; *Commonwealth v. McDonald, supra.*)

One assignment of the petition is that the court erred in giving paragraphs 2, 3, 4, 5, 7, 8, and 10 of the instructions given on its own motion, for the reason that under the evidence the court should have instructed the jury to acquit the defendant, and not have submitted the question of his

guilt to the jury. Having concluded that there was suffi-
cient evidence to sustain a verdict of guilty, we have, in
effect, determined the question raised by this allegation of
the petition and need not further examine it. There being
no fault found with any particular one of the instructions,
but a general complaint directed against all of them that
they should not have been given, but in their stead there
should have been a direction to the jury to acquit the de-
fendant, based upon the insufficiency of the evidence, a
determination that there was evidence sufficient to submit
to the jury completely answers this objection to the in-
structions. It is claimed in the petition that the trial court
erred in admitting a portion of the evidence of one of the
witnesses for the state, Philip Yocum, found on page 35 of
the bill of exceptions. We have examined all of the evi-
dence on the page indicated to the admission of which any
objection was interposed, and in our opinion there is none
which could in any degree prejudice the accused in his
rights or mislead the jury. Hence, if there was any error
it was not prejudicial.

It is further alleged that the court erred in admitting
the evidence of John A. Funke, one of the witnesses for
the state, and for such testimony we are directed by the
petition to pages 37, 38, and 39 of the transcript of the
evidence. The only interrogatory on either of the pages
to which any objection was made is the following: "Q.
State if on the 19th day of May, 1894, you saw the de-
fendant Thompson. Defendant objects as immaterial and
irrelevant. Overruled. Exception. A. Yes, sir." There
was nothing in this question nor its answer which was
harmful to the accused or his interests. All the testimony
on the pages designated, except this just quoted, was re-
ceived without objection, and at the close of the evidence
given by this witness the attorneys for the accused asked
that it all be stricken out, and it was so ordered by the
court, except a small portion of it, and to the ruling of the

court allowing this small portion to remain in the record
there was no objection or exception; hence there is nothing
in this assignment of the petition in which we can discover
any available error.

It is argued that the court erred in refusing to give cer-
tain of the instructions offered and requested by the de-
fendant.   In the motion for a new trial appears the fol-
lowing statement in regard to these instructions: "The
court erred in refusing to give the first, second, third,
fourth, and fifth paragraphs of instructions asked for by
the defendant and duly excepted to at time of said re-
fusal."   It is conceded by counsel for the accused that at
least one, if not two, of the instructions referred to in the
foregoing quotation from the motion for a new trial were
properly refused.   This being conceded or determined, the
action of the court in this particular will not be further
examined, as where, in a motion for a new trial, it is alleged
that the court erred in refusing to give a group of instruc-
tions, it will be examined or considered no further when it
is ascertained that the refusal to give any one of the group
of instructions was proper. (*Jenkins v. Mitchell*, 40 Neb.,
664; *Hedrick v. Strauss*, 42 Neb., 485.)   The judgment
of the district court must be

AFFIRMED.