FRANK PROKOP, PLAINTIFF IN ERROR, v. THE STATE OF
NEBRASKA, DEFENDANT IN ERROR.

28 N. W. 2d 200

Filed June 27, 1947.    No. 32228.

*Miles W. Johnston,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Erwin A. Jones,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

The defendant was convicted of the crime of rape in the district court for Fillmore County and was sentenced to imprisonment in the penitentiary for ten years at hard labor. Defendant brings error proceedings to this court.

The assignments of error are as follows:

"(a) Because the prosecutrix was not corroborated by evidence other than her own statements, acts, and doings, and same was insufficient in law.

"(b) Because the evidence showed that the pros-

ecutrix did not offer the resistance legally necessary in order to make the admitted act of sexual intercourse rape.

"(c) Because the proof relating to the non-consent of the prosecutrix to the admitted act of sexual intercourse was not established by the proper quantum or degree of proof.

"(d) Because the interpretation of the prosecutrix's testimony was not verbatim as spoken by the witness, but was colored and unfairly and improperly interpreted by the interpreter, thus depriving the defendant of a clear and impartial presentation of the evidence."

We will take up the last alleged error first. The bill of exceptions discloses that, when the county attorney called the prosecutrix as his first witness to the stand, he stated that she did not speak the English language well, but spoke Bohemian, and asked for an interpreter. The court thereupon appointed one, and he was duly sworn to act in that capacity.

As the taking of her evidence progressed, the trial judge, understanding the Bohemian language, warned the interpreter a number of times as to his duties, such as, that he must not ask any questions except those which were asked by the attorney, and must directly interpret her answers as given; again, that he must stop her and have her restate any part of the answer which he did not recall. He warned him that he must interpret what she said; that "If the answer doesn't mean anything to you the attorney can ask another question then."

Again, the question was in regard to the screen door on the porch, which the defendant broke open. "Q And what kind of a latch is there on this door? A It was a new one and a good one. * * * THE COURT: That isn't all of the answer that she made. She says, 'I just had it put on new.' * * * Q Now, after you heard the knocking and after you heard what sounded like the screen was being broken, then what did you hear?

A She was scared and she just laid there.  THE COURT: Mr. Wozab, she didn't say 'she'.  She says 'I'.  You must interpret exactly as she says it.  It is a difficult proposition, I know, but you must interpret it exactly as she states it."

· Later the court said:  "Mr. Wozab, that is not a fair interpretation.  She stated first that she saw a man standing by the door in the hallway and then she struck a match.  * * * It is a difficult proposition, but you let her run away with you."  During the cross-examination the court said:  "Let's try this witness without interpreting for a while and see how we get along."

It is rather difficult to be compelled to examine an important witness through an interpreter.  The interpreter should be absolutely impersonal, the counsel asking a question the same as if the witness could understand it and the interpreter repeating the question with no added remarks of his own, and giving back the witness' answer in her own words.  There should be no extraneous conversations between counsel and the interpreter; all should be left to the sound discretion of the court. See section 33-142, R. S. 1943.

Counsel and witness were fortunate in the case at bar, in that the trial court understood the language of the witness and apparently corrected the shortcomings of the interpreter.  See Gregory v. Chicago, R. I. & P. R. Co., 147 Iowa 715, 124 N. W. 797.

"But the danger of mistakes in legal proceedings is such that nothing but practical necessity can justify the intervention of an interpreter between counsel and witness or witness and jury, although it is well settled that on a proper occasion it is allowable, and the occasion must usually be judged of by the trial court."  Rajnowski v. Detroit, D. C. & A. R. R. Co., 74 Mich. 15, 41 N. W. 849.  See Annotation, 53 A. L. R., p. 373; 31 C. J. S., Evidence, § 280, p. 1031.

In accordance with this rule, we note that after the prosecuting witness became somewhat accustomed to the

court procedure, and could employ her limited knowledge of the English language to advantage, the court very properly instructed them to proceed without the interpreter.

It appears to this court that the evidence given through the interpreter and corrected by the trial judge gave to the jury a fair and unbiased version of the answers made by the witness in Bohemian, and therefore the defendant was not in any way prejudiced in the taking of such evidence, and the fourth assignment of error is without merit.

The first three assignments of error charge that there was insufficient corroboration of the evidence of the prosecutrix, that she did not offer the resistance legally necessary to make the intercourse rape, and the crime was not established by the proper quantum of proof. To examine these alleged errors requires an examination of the evidence.

We will now set out the facts very briefly. The defendant was a young man 23 years of age, about 6 feet tall, weighing 196 pounds, and is charged with having committed the crime of rape on June 27, 1946, upon the complaining witness, both of the parties being residents of the village of Milligan. The defendant admitted the intercourse, but testified that it was with her consent, which she denied.

The complaining witness was 5 feet 6 inches in height, weighing 125 pounds, 60 years of age, and was the mother of seven children. She was a spry, healthy woman, doing her own marketing and housework. The defendant got into her home by breaking the screen on the back door and unlatching the door. She was awakened by this, and when he struck a match, she saw that a man was in the house. She got up and turned a flashlight on his face and recognized him and asked what he wanted. He grabbed her hands and squeezed her throat, threw her on the bed, covered her head with a pillow, so she could hardly breathe. She said that whenever

she got her mouth free she screamed. The act charged in the complaint was committed twice, during which time there was some conversation between them. She tried to elude him, but he was too strong for her. After he left she turned on the electric light and saw that it was 1:00 a. m. She found that her right heel was scratched or bruised from his boot, it was bleeding and she bandaged it; she had a bruised eye, a bruised leg, and there were imprints of his hands on her throat.

She went to bed and in the morning she met several people but said she was too ashamed to make complaint, but went to see the doctor during the morning and told him she had been raped earlier that morning.

The doctor testified that he knew both parties very well, having known the prosecutrix for over 30 years. He said she came to his office about 11:00 a. m. and told him she had been raped. He examined her body and found some discoloration of the skin on her arms and back. He told her it was a serious matter, and to tell her relatives about it, which she did. At the time she came to the doctor, she was very nervous and on the verge of hysteria, her voice jerked and her face twitched. Toward evening she returned to his office and he then examined her vagina, and it was red and irritated, and was not normal.

The deputy sheriff, who examined her several hours later, testified to seeing a bruise over her right eye on the forehead, and he noticed that her heel had been bandaged. Her nephew testified that he saw pink bruises on her throat.

The defendant testified that he knocked on her door and she came to the door and said, "Come on in." She recognized him and said, "why didn't I go home and go to bed," but he refused to go, speaking "in a drunken way," and went in, and testified in the greatest detail as to the acts, which evidence need not be set out herein. He said that he then went out the front door and went home.

The evidence of the prosecutrix and the admission of the charge by the defendant, with the claim that she consented to the acts, were submitted to the jury, and in instruction No. 9 the jury was told: "You must find on the part of the woman not merely a passive policy or equivocal submission to the defendant; such resistance will not do. Voluntary submission by the woman, while she has power to resist, no matter how reluctantly yielded, removes from the act an essential element of the crime of rape. If the carnal knowledge was with the voluntary consent of the woman, no matter how tardily given, or how much force had theretofore been employed, it is not rape." This was as favorable an instruction as the defendant was entitled to under the facts proven in the case, and the jury found the defendant guilty.

"The degree of force required is relative, depending upon the particular circumstances, but in any such case it must be sufficient to subject and put the dissenting woman within the power of the man, and thus enable him to have carnal knowledge of her, notwithstanding good-faith resistance on her part. In that connection, whether carnal knowledge was forcible and against her will or with her consent, is ordinarily indicated by resistance or lack of it by the woman. While the degree of resistance required is also relative, depending upon the particular circumstances, the general rule is that a mentally competent woman must in good faith resist to the utmost with the most vehement exercise of every physical means or faculty naturally within her power to prevent carnal knowledge, and she must persist in such resistance as long as she has the power to do so until the offense is consummated." Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897.

We have reached the conclusion that the jury were justified in finding that this elderly woman resisted, to the extent required by law, the attack of this 23-year-old man weighing 196 pounds, who had been drinking, and.

who broke into her home in the dead of night to accomplish his purpose of raping her.

"In a prosecution for rape, it is not essential to a conviction that the prosecutrix should be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she be corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn." Fager v. State, 22 Neb. 332, 35 N. W. 195. See Mathews v. State, 19 Neb. 330, 27 N. W. 234; Robbins v. State, 106 Neb. 423, 184 N. W. 53; Wiedeman v. State, 141 Neb. 579, 4 N. W. 2d 566; 44 Am. Jur., Rape, § 108, p. 971.

We are as definitely of the opinion that the evidence of her bleeding heel, bruised back, eye, and wrists, discoloration on her neck, and other evidences of the attack were corroborative evidence within the meaning of the law, sufficient to sustain the verdict of the jury. However, after a consideration of the entire evidence, and in view of the youth of the defendant and his record up to this offense, we will reduce the sentence to five years, and as thus modified the sentence is affirmed.

AFFIRMED AS MODIFIED.

CARTER, J., participating on briefs.

SIMMONS, C. J., dissenting.

I am of the opinion that the evidence is not sufficient to sustain the conviction of the defendant, when tested by established rules defining the proof required to establish the crime of rape.

In Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897, we held: "In a prosecution for rape, competent evidence must show beyond a reasonable doubt not only that defendant committed the act charged, but that he did so under such circumstances that every element of the alleged offense existed, and where the

evidence fails to meet that test, it is insufficient to support a conviction."

We further held: "In the absence of sufficient proof of threats and fear, proof beyond a reasonable doubt of want of consent, that is, of actual force by the man with actual good-faith resistance thereto by the woman, is always essential to support a conviction." There is no evidence here that the complaining witness yielded "because of fear caused by threats of immediate great bodily injury or death." There were no threats.

We further held: "The degree of force required is relative, depending upon the particular circumstances, but in any such case it must be sufficient to subject and put the dissenting woman within the power of the man, and thus enable him to have carnal knowledge of her, notwithstanding good-faith resistance on her part. In that connection, whether carnal knowledge was forcibly and against her will or with her consent, is ordinarily indicated by resistance or lack of it by the woman." There is evidence of the use of force here, but the last use of force occurred when the complaining witness was placed face down on her bed. She testified to no act of force thereafter.

We further held: "While the degree of resistance required is also relative, depending upon the particular circumstances, the general rule is that a mentally competent woman must in good faith resist to the utmost with the most vehement exercise of every physical means or faculty naturally within her power to prevent carnal knowledge, and she must persist in such resistance as long as she has the power to do so until the offense is consummated." In Selvage v. State, *ante* p. 409, 27 N. W. 2d 636, we held: "To constitute the crime of forcible rape upon a woman of the age of 18 years or upwards, possessed of her natural physical and mental powers and not terrified by threats or force, she must resist to the extent of her ability and persist in such actual resistance, by every means at

her command, until the act is consummated." There is no evidence here of any acts of resistance on the part of the complaining witness from the beginning to the end of the event. As was said in Brown v. State, 127 Wis. 193, 106 N. W. 536 (cited with approval in the Cascio case): "Resistance is opposing force to force (Bouvier), not retreating from force." In Vaughn v. State, 78 Neb. 317, 110 N. W. 992, we stated that under peculiar circumstances a less degree of resistance may be sufficient. See Hammond v. State, 39 Neb. 252, 58 N. W. 92, and Thompson v. State, 44 Neb. 366, 62 N. W. 1060, for illustrations of peculiar circumstances calling for an application of the exception. It is not claimed that there are any peculiar circumstances here to make the general rule inapplicable.

We further held in the Cascio case: "In determining the sufficiency of the evidence in the case at bar, we are required to observe the rule that mere general conclusions of the prosecutrix, without relating the very threats and acts justifying submission because of fear or constituting the required actual force and resistance, are of themselves insufficient to sustain a conviction of the accused." Here the complaining witness testified to the conclusions that the act was against her will; that she could not help it; that she did not have strength; that she resisted to the full extent of her strength; and that it would have done no good to resist. These assertions are both of resistance and of lack of resistance. Clearly under the rule just cited, they are insufficient to sustain the conviction. Mathews v. State, 19 Neb. 330, 27 N. W. 234.

In Oleson v. State, 11 Neb. 276, 9 N. W. 38, we quoted with approval this rule: "The prosecutrix, if she was the weaker party, was bound to resist to the utmost. Nature had given her hands and feet with which she could kick and strike, teeth to bite, and a voice to cry out; all these should have been put in requisition in defense of her chastity." (In Brown v. State, *supra*,

the court added "pelvic muscles" to the list.) We applied this test in Vaughn v. State, *supra*. The complaining witness here testified that she did not use her legs, arms, or any other ordinary means of reprisal. The witness does testify that she screamed. Yet, her evidence is replete with admissions of opportunity to scream before any act of intercourse, and she testified that she did not because it would do no good.

The complaining witness testified that when the defendant entered her home she recognized him, called him by name, and asked him what he wanted. During the actual acts of intercourse, the witness and defendant visited about her age (and she refused to tell him, requiring him to guess), and about his mother's name. He asked for cigarettes; she asked him not to smoke on her bed. She was thirsty and got up partly from the bed, took a glass of water from a window sill, drank it, and lay down again beside defendant. Between the two acts the defendant lay still on the bed and she remained beside him. After the defendant left the witness' home, she got up, turned on the light, noted the time, locked the doors, bandaged the scratch on her heel, went back to bed and apparently to sleep until morning. The next morning she saw two of her lady neighbors, one of them was in her home. She made no complaint to them and there is no evidence of anything unusual in her appearance or conduct at the time. Just before noon she went to the doctor and complained to him, but on cross-examination testified that she called on him because she feared a venereal disease. Thereafter followed repeated discussions of the event with relatives and officers. The prosecution followed.

Take an admission or proof of the sexual act, add to it the natural revulsion against the crime of rape, together with relative and community hysteria, and you have the ingredients by which juries are persuaded to return verdicts of guilty, as witness the verdicts in

this, the Cascio, and Selvage cases. It is the duty of trial courts to require proof meeting the tests of law before submitting these cases to the emotions of juries. It is the duty of appellate courts to set aside convictions where the evidence does not meet these tests. Heretofore we have done so in many cases down to and including the Cascio case and more recently the Selvage case.

This defendant may or may not have been guilty of some offense against the laws of this state. However that may be, the evidence falls far short of meeting the tests or establishing the elements of the crime of rape. I see no distinguishing difference in the factual situation in the Cascio and Selvage cases and the instant case.

CARTER, J., joins in this dissent.