THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID YANIK, Appellant.

First Department, January 4, 1977

*Carol Berkman* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Richard M. Seltzer* of counsel *(Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

*Per Curiam.* At the time of the alleged rape the complainant was 22 years of age and was staying at the YMHA, having arrived from Alabama on November 11, 1973. The defendant called the Y on the Saturday following the complainant's arrival in New York, seeking to speak to a girl friend. She was not available but the complainant, who answered the telephone, and the defendant engaged in a conversation as a result of which they made an appointment to meet on the next day. They did meet as prearranged and attended church services together. Following the services they both went to the defendant's apartment, after having stopped to buy groceries.

At the defendant's apartment the defendant cooked breakfast and thereafter they engaged in general conversation. In the course of this conversation she told defendant about several experiences which she had with one or two men who had made attempts to have sex with her but she did not allow it. She also told the defendant that she had a boy friend in Alabama and she liked him very much.

In the course of their conversation the complainant stated that the defendant attempted to kiss her and she asked him to stop. He then began rubbing her back for a while and he unzipped her dress. She jumped up and started to leave but the defendant threw her on the bed and pinned her down. She broke away and started to cry. Defendant apologized and shortly thereafter walked her to the subway station. Before he left her he gave her his telephone number.

She further testified that on returning to the Y she discussed her experience with a girl who lived near her and this girl told her that she had acted silly and unsophisticated. She also discussed it with a male friend and he agreed with what the girl friend had stated to her.

Following these conversations with her friends the complainant telephoned the defendant, apologized for her behav-

ior, and told him she wanted to see him again. She felt embarrassed and "wanted to make it up to him."

The following day the defendant met the complainant at the Y and took her to dinner after having borrowed $15 from her. Following dinner, at about 9:30 P.M., they both went to the defendant's apartment once again. He repaid the $15 to her. She then telephoned the Y and left the defendant's telephone number for the purpose of rerouting telephone calls.

The defendant then tried to get her to sniff a surface anesthetic. She protested and did not comply. The defendant inhaled it himself and then fell asleep at about 10 P.M.

The complainant remained in the apartment until 11 o'clock when she decided to go home and she awakened the defendant. On being awakened he asked the complainant to spend the night with him and she refused. He then threw her on the mattress and held her there. Explaining that she wanted to go to the bathroom, she was released.

When she came out of the bathroom she stated that she kicked him and he struck her in the face and nose. In the course of this scuffle she stated that her dress was ripped. She struggled with him for some time and then, to avoid further harm, she agreed to submit to his desires. She testified that he then became considerate and inquired of her sexual preferences. She pretended to go along with everything to the point of completing the sexual act with him.

There is no intention by this decision to give a complete marshalling of the facts as disclosed in the record. However, the real issue between the parties, as presented in the record, must be pinpointed and that is the reason for referring to some of the testimony.

In this connection it is important to note that the defendant in his testimony denied the statements of the complainant and insisted that there was no force to compel her to submit to him as she was a willing participant; he further testified that she not only had sex with him on the day charged in the indictment but also on the previous day when she first visited his apartment. As to certain marks on the nose of the complainant he ascribes that to over-emotional excitement accompanying the sex act.

It is evident, therefore, that the most important issue which the jury had to pass upon was the issue of whether the complainant participated in the sexual act voluntarily or

whether she was the victim of force. Under the circumstances it was of the greatest importance for the jury to have had a very clear understanding of what constitutes rape in the first degree.

Rape in the first degree is defined in section 130.35 of the Penal Law, which reads as follows: "A male is guilty of rape in the first degree when he engages in sexual intercourse with a female: 1. By forcible compulsion".

In subdivision 8 of section 130.00 of the Penal Law we find a definition of forcible compulsion and that definition reads as follows: "'Forcible compulsion' means physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury".

The trial court properly left the issue of forcible compulsion for the jury's determination and in so doing charged the jury in the words of the statute, subdivision 8 of section 130.00 of the Penal Law. Of course, there was nothing wrong with that instruction as far as it went. However, under the circumstances disclosed in the record the jury should have been given a far more detailed understanding on the issue of forcible complusion. The defendant does not deny the act of intercourse with the complainant. In fact he admits it. But he denies having raped her.

In the case of *People v Carey* (223 NY 519, 519-520), where a similar question was involved, the court said: "The defendant admits the intercourse, but denies the rape. The jury were to say whether the complainant had resisted. They had the defendant's testimony that she had yielded to him once before. They had the complainant's assertion that in the past he had taken liberties with her person, and even tried to ravish her. None the less, she was again receiving him as a visitor in her rooms. Rape is not committed unless the woman opposed the man to the utmost limit of her power. *(People v Dohring,* 59 N. Y. 374). A feigned or passive or perfunctory resistance is not enough. It must be genuine and active and proportioned to the outrage. The record discloses a situation where conflicting inferences may be drawn whether resistance in that sense was offered."

In the case of *People v Hughes* (41 AD2d 333, app dsmd 36 NY2d 981), again the question of complainant's resistance was considered by the court and at page 336 of the Appellate Division opinion we find the following: "On the question of the

complainant's resistance, where the charge is rape in the first degree, rape is not committed unless the woman opposes the man to the utmost limit of her power. The resistance must be genuine and active".

We are satisfied that the trial court was eminently fair in the conduct of this trial but unfortunately it failed to give a more detailed explanation to the jury of what forcible compulsion really is. At page 312 of the trial minutes the court said: "Now, what is forcible compulsion? Forcible compulsion means physical force that overcomes earnest resistance, or a threat either expressed or implied, that places a person in fear of either death or a serious physical injury."

He charged just about what the statute says. But, on this record, a more detailed explanation should have been given to the jury. In fact, the defendant requested in writing that the jury be charged that to be guilty of rape in the first degree the victim must oppose the perpetrator to the utmost limit of her power by genuine and active resistance. This charge should have been given and is warranted under *People v Carey (supra)*, and it was error to refuse to do so. In fact, one searches in vain for any reference by the trial court for language used by the appellate courts, e.g., "feigned or passive or perfunctory resistance" is not enough. Also we find lacking that the "resistance must be genuine and active."

For the reasons above given the judgment of conviction should be reversed on the law and the case remanded for a new trial.

MARKEWICH, KUPFERMAN, BIRNS and CAPOZZOLI, JJ., concur; STEVENS, P. J., dissents and would affirm.

Judgment, Supreme Court, New York County, rendered on July 7, 1975, reversed, on the law, and the case remanded for a new trial.