■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT P. DOZIER, Appellant. — Appeal from a judgment of the County Court of Tompkins County (Dean, J.), rendered August 14, 1980, upon a verdict convicting defendant of the crimes of rape in the first degree and sodomy in the first degree. Defendant and complainant were housed in the same campus dormitory at Cornell University in August, 1979, prior to the commencement of the fall semester. Complainant was a law student and defendant was enrolled in the University's School of Industrial and Labor Relations. They had met casually in the dormitory on two or three occasions prior to the alleged rape. As to the incident in question, defendant admits that the acts of oral sex and intercourse occurred. He insists, however, that only consensual acts took place and that, although complainant initially refused, she subsequently agreed to what transpired. A multitude of issues are raised by defendant on this appeal, none of which, in our view, has merit or requires comment by this court. Essentially, the jury was presented with questions of credibility and they chose to adopt the version offered by complainant. It is their duty to weigh the evidence and determine the truth from conflicting testimony (*People v Seidenshner,* 210 NY 341) We would only add that the issue of the constitutionality of subdivision 8 of section 130.00 of the Penal Law defining forcible compulsion, has been recently considered by this court (*People v Beam,* 83 AD2d 82; see *People v Locke,* 70 AD2d 686; *People v Bercume,* 38 AD2d 356). Judgment affirmed. Kane, J. P., Mikoll, Yesawich, Jr., and Herlihy, JJ., concur.

Main, J., dissents in the following memorandum. Main, J. (dissenting). I respectfully dissent. The history of and the need for change in the relevant statutes are well set forth in *People v Dorsey* (104 Misc 2d 963) and the Legislature clearly expressed its intent in the preamble of the amendment in which it was decreed that: "it is the legislature's intention to modify the resistance requirement in the definition of forcible compulsion so that the victim need only offer so much resistance as is *reasonable* under the circumstances" (L 1977, ch 692, § 1; emphasis added). Subdivision 8 of section 130.00 of the Penal Law, as amended, in defining " '[e]arnest resistance' " reads "means resistance of a type *reasonably* to be expected from a person who genuinely refuses to participate in sexual intercourse * * * under all the attendant circumstances" (emphasis added). Readily to be perceived is reestablishment of the rule of reason previously followed in *People v Yannucci* (283 NY 546) and in *People v Bianchi* (55 AD2d 993), but shunned in *People v Yanik* (55 AD2d 164). No one can seriously disagree with the argument that resistance by a rape victim greatly increases the likelihood of violence by the perpetrator, and the amendment relieves the victim of resisting if the exercise of reason under all of the attendant circumstances so dictates. However, resistance is not confined solely to physical force, and the obligation to earnestly resist includes a duty to escape and a duty to cry out if these measures can be taken without the risk of death or serious bodily harm. Surely the victim who is trapped with her assailant in an elevator between floors, with no place to retreat to and with no avenue from which help could arrive, would not be required by reason to cry out, nor does the statute require that she ascertain what the defendant would do if she refused to take off her clothes (*People v Dorsey, supra,* p 971). Like the victim in *People v Coleman* (42 NY2d 500, 506), the *Dorsey* victim, at the time she capitulated, was virtually imprisoned and isolated in the elevator. I agree with the majority that virtually no resistance is required when the victim is seized and whisked away by four big men to an isolated and uninhabited area as was the circumstance in

a case upon which it relies (see *People v Bercume,* 38 AD2d 356). The alleged victim here was not trapped, she was not in an isolated area, nor was she imprisoned. Rather, she was in an occupied college dormitory with, as complainant concedes, sensitive ears but a few steps away. The perpetrator had no lethal weapon and common sense tells us that the complainant could have screamed for help with the reasonable expectation that help would have quickly arrived, and that she would have suffered neither death nor serious bodily harm. Furthermore, it should be noted that complainant, if not expressly, then by clear implication, invited defendant into her room. As to her behavior, she testified "I just felt that I should cooperate with him as fully as possible. I just said things to try to make him think that I really liked him, and I was glad that he came by, and I really wanted to all along". While asserting that this co-operative attitude was engendered by defendant's alleged threat to hit her over the head with an umbrella, she testified as to opportunities of escape of which she did not avail herself for reasons known only to her. Most significantly, just before the occurrences complained of took place, complainant left the bed to close the door of her dormitory room. This complainant was not unsophisticated and unaware. She had grown up in New York City, graduated from college, lived in a dormitory in Paris for two years while doing graduate work, had completed one year at Cornell Law School and was about to start her second year. Under these circumstances and others revealed in the record, I cannot possibly conclude, as does the majority by its affirmance, that complainant's conduct under the circumstances was reasonable, or that she was not required to cry out for help or to escape when she obviously could have done so without fear of death or serious bodily harm. In my view, the proof adduced was insufficient to establish defendant's guilt beyond a reasonable doubt and the verdict was against the weight of the credible evidence.