[No. 21199–4–I.   Division One.   June 19, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. CURTIS
LEE MCKNIGHT, *Appellant.*

522

FORREST, J., dissents by separate opinion.

*Helen A. Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Barbara A. Mack, Deputy,* for respondent.

COLEMAN, C.J.—Curtis McKnight appeals from his conviction for second degree rape. He assigns error to the finding that he forcibly compelled the victim to have sexual intercourse with him. We affirm.

On May 6, 1987, 14–year–old C encountered McKnight, 17 years old, near her home as she was walking to her health club. C and McKnight were vaguely acquainted from riding the same school bus. They began talking and C changed her mind about going to the health club. The two returned to C's apartment. C testified that McKnight asked to come in. She said she allowed him into the apartment because she was "bored and lonely."

As the two were sitting on a mattress that served as a living room couch, they began kissing. C testified that she told McKnight to stop kissing her, but instead "he started slowly [to] push me down onto the couch." He then

"started to pull on my clothes and I told him to stop it again. And he didn't do anything except kept doing it." Once McKnight had C disrobed, he undid his pants and lay on top of her. C testified that this made her feel "scared." At that point "he got inside me and started rubbing down on top of me. After that I told him it hurt and he still didn't stop."

When the act was finished, McKnight left and C called her cousin, R, who said C was "scared [and] panicked, . . . she was mumbling and crying". C told R that "she had gotten raped." R testified that C is "physically weak." C testified that at the time of the event, she had never been out on a date with a boy.

C told an investigating police officer that "I think I've been raped" and that she had protested verbally, but had not physically resisted McKnight.

C was taken to the Group Health emergency room where she was examined by Dr. Cynthia Talbot, who found C's hymenal ring was torn and bleeding, indicating that she had had sexual intercourse for the first time. Talbot also noted a laceration of the base of the vagina in the perineum, indicating either that the intercourse was unusually aggressive or that there had been inadequate preparation for intercourse.

The parties stipulated that an act of sexual intercourse had occurred. At the fact–finding hearing, McKnight argued that the act was consensual. The court found that McKnight "by forcible compulsion" engaged in intercourse with C. The court found C's testimony was credible and consistent with the evidence while McKnight's was not. The court, in orally explaining its ruling, said that its finding of forcible compulsion was based on the fact that C is physically weak and that McKnight had pushed her down on the couch after she verbally protested his kissing her. The court concluded that McKnight had committed second degree rape.

The sole issue in this appeal is whether the evidence of forcible compulsion was sufficient to support appellant's conviction for second degree rape. Appellant does not argue

that the evidence is insufficient to support his conviction for rape. Instead, he argues that he should have been convicted of the lesser included charge of third degree rape.[1] The second degree rape statute under which appellant was convicted provides:

> **Rape in the second degree.** (1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:
> (a) By forcible compulsion[.]

RCW 9A.44.050(1)(a). Forcible compulsion is "physical force which overcomes resistance . . ." Former RCW 9A.44.010(5).

■ Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). In assessing the sufficiency of the evidence supporting a conviction, the State's evidence is presumed to be true, and this court considers all reasonable inferences that can be drawn from that evidence. *State v. Gear,* 30 Wn. App. 307, 310, 633 P.2d 930 (1981).

We note at the outset of our analysis that this case presents an unusual fact pattern. There is no evidence that the victim offered physical resistance. Moreover, while she testified that during the assault she felt "scared," she also testified that appellant had not physically threatened her. Accordingly, the only basis for appellant's conviction for second degree rape is that he engaged in sexual intercourse with C by using physical force to overcome her resistance. RCW 9A.44.050(1)(a); former RCW 9A.44.010(5).

---

[1] RCW 9A.44.060(1)(a) provides:

"**Rape in the third degree.** (1) A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator:

"(a) Where the victim did not consent as defined in RCW 9A.44.010(6), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct[.]"

Appellant makes two arguments challenging the sufficiency of the evidence of forcible compulsion: (1) that there was no evidence of C's resistance; and (2) that the use of force here was too slight to distinguish this case from third degree rape.

■ We decline to hold that forcible compulsion requires, in all cases, a showing that the victim offered physical resistance. The recent trend, in recognition of the fact that a victim's resistance increases the likelihood of the attacker's use of violence, has been either to dispense with the resistance requirement altogether, allowing forcible compulsion to be established solely on a showing of force, *State v. Mackor,* 11 Conn. App. 316, 527 A.2d 710, 714–15 (1987); *People v. Barnes,* 42 Cal. 3d 284, 721 P.2d 110, 117, 228 Cal. Rptr. 228 (1986), or to allow the resistance requirement of forcible compulsion to include resistance manifested by other than physical means. *People v. Dozier,* 85 A.D.2d 846, 846, 447 N.Y.S.2d 35, 36 (1981) (Main, J., dissenting) (under statutory revision defining forcible compulsion to require only "so much resistance as is *reasonable* under the circumstances'" resistance is not confined to physical resistance, but includes escaping or crying out, if, under the circumstances, physical resistance would increase the likelihood of violence by the perpetrator); *State v. Reed,* 166 W. Va. 558, 562, 276 S.E.2d 313, 317 (1981) (under statutory definition of forcible compulsion as "force that overcomes such earnest resistance as might reasonably be expected under the circumstances . . . 'resistance' includes physical resistance or any clear communication of the victim's lack of consent.").

We find no rational basis for requiring resistance to be manifest in all cases by physical means, and in fact, are persuaded that public policy considerations militate against such a requirement. *Barnes,* 721 P.2d at 118–20.

The *Barnes* court, in discussing a legislative amendment dispensing with the resistance requirement in forcible compulsion, noted that the requirement originated as an exaggerated insistence on evidence of nonconsent. This requirement resulted from the historical wariness with

which courts and commentators viewed victims of sexual assault. *Barnes,* 721 P.2d at 118. The court noted that the California Legislature has rejected the resistance requirement, given what is now known about the realities of sexual assault—different victims respond differently to assault, and some may, in their panic, freeze, effectively offering no resistance. Moreover, studies show that resistance increases the risk that the perpetrator will employ violence or that the victims will receive greater injuries than if no resistance were offered. *Barnes,* 721 P.2d at 118–19. Accordingly, we hold that whether the evidence establishes the element of resistance is a fact sensitive determination based on the totality of the circumstances, including the victim's words and conduct. *See* 65 Am. Jur. 2d *Rape* § 6, at 765 (1972).

We find that there is substantial evidence upon which a rational trier of fact could conclude that C resisted appellant's attempt to have sexual intercourse with her. The evidence established that C was physically weak. A reasonable fact finder could conclude from this that C was incapable of offering physical resistance.

C testified that she had never been out on a date with a boy. The evidence showed that this was her first sexual intercourse. Her cousin characterized her as naive and unsophisticated. Indeed, the investigating officer testified that when he interviewed C at the scene, she told him, "I think I've been raped." A reasonable fact finder could infer from this evidence that C was sufficiently naive not to comprehend fully what was happening during the assault. A reasonable fact finder could conclude that a rape victim who is unsophisticated about sexual matters and who has never been sexually active might only offer resistance commensurate with her limited understanding of what was occurring. *See State v. Mertz,* 129 Wash. 420, 422, 225 P. 62 (1924).

Moreover, C did not willingly lie down or disrobe, but was pushed into a prone position and had her clothes removed by appellant. While C did not cry out, and the evidence contains no indication that she struggled with appellant or attempted to escape, the evidence does show

that C was "scared", physically weak, and that no one else was at home in the apartment during the assault. From that evidence, a reasonable fact finder could conclude that C did not cry out or struggle because, from her perspective, it would have been a futile gesture. *See State v. Dizon,* 47 Hawaii 444, 390 P.2d 759, 767 (1964) (victim not required to make outcry where it would not be useful).

Given C's physical weakness and unsophistication and her isolation in the apartment with appellant, a reasonable juror could conclude C's resistance was reasonable under the circumstances. *See Mertz,* at 422.

We next turn to appellant's argument that the slight evidence in this case that he used force to compel C's submission to intercourse is insufficient to establish second degree rape. Appellant argues that a certain degree of force inheres in the act of intercourse and that to achieve intercourse without consent, *i.e.,* third degree rape, the perpetrator must act somewhat assertively. Appellant argues that the slight evidence of force here is no more than what must occur to establish third degree rape. We disagree.

█ The *force* to which reference is made in forcible compulsion "is not the force inherent in the act of penetration but the force used or threatened to overcome or prevent resistance by the female." (Footnote omitted.) 3 C. Torcia, *Wharton on Criminal Law* § 288, at 34 (14th ed. 1980) (citing *Mills v. United States,* 164 U.S. 644, 648–49, 41 L. Ed. 584, 17 S. Ct. 210 (1897)); *cf. People v. Tollack,* 105 Cal. App. 2d 169, 171, 233 P.2d 121, 122 (1951) ("force," as referred to in "forcible compulsion," "implies physical power exerted on a person or thing. . . . '"The kind of force is immaterial; . . . it may consist of the taking of indecent liberties with a woman, or laying hold of and kissing her against her will."'"); *Prokop v. State,* 148 Neb. 582, 28 N.W.2d 200, 203, 172 A.L.R. 916 (1947) (the degree of force to constitute common law rape is relative, depending on the circumstances, but must be enough to overcome the victim and have intercourse against her will). Where the degree of force exerted by the perpetrator is the distinguishing feature between second and third degree rape, to

establish second degree rape the evidence must be sufficient to show that the force exerted was directed at overcoming the victim's resistance and was more than that which is normally required to achieve penetration.[2]

Reasonable minds can differ as to whether the acts of slowly pushing C to a prone position and then removing her clothes in response to the victim's requests that the advances stop manifest a degree of force greater than that which is inherent in the act of intercourse. A reasonable juror could, however, infer from the evidence that these were acts of force over and above what is necessary to achieve intercourse and that these acts were employed to overcome C's resistance. The evidence, when taken as a whole and viewed in a light most favorable to the prosecution, establishes that the act of intercourse was accomplished by the use of force. *See State v. Kester,* 38 Wn. App. 590, 594, 686 P.2d 1081 (1984) ("forcible compulsion" is antonym of *"consent"*); *Daniels v. State,* 437 So. 2d 614,

---

[2]The dissent argues that the majority analysis blurs the distinction between second and third degree rape. Under the dissent's formulation, a victim must decide to struggle physically with an attacker in order for there to be forcible compulsion. We do not think the Legislature intended to place victims is such a position. Instead, a feature distinguishing intercourse by forcible compulsion from intercourse without consent is the force employed by the attacker. Under this construction of the statute, third degree rape continues to be nonconsensual intercourse achieved without the use of physical force. For example, some instances of marital or date rape may not involve forcible compulsion and would properly be charged as third degree rape. Additionally, in situations where the trier of fact is not persuaded by the evidence that forcible compulsion has been established, the lesser included offense of third degree rape remains available. Thus the dissent is incorrect in suggesting that our analysis eliminates third degree rape as a crime.

While the dissent professes to agree that physical resistance is not required in all instances of second degree rape, the effect of the dissent's analysis is to restrict those instances exclusively to cases where there is evidence of a threat placing the victim in fear of physical harm. Forcible compulsion involving a threat is, however, merely one specialized form of forcible compulsion under former RCW 9A.44.010(5). There are other forms of forcible compulsion that do not necessarily involve a threat of physical harm, such as the use of force to overcome someone's refusal to consent to sexual relations. In the instant case, where the victim was alone in her apartment and, according to the trial court's findings, physically weak, we do not believe that the Legislature intended that she actually had to subject herself to a physical contest or to provoke a threat before the trier of fact could conclude that her attacker employed forcible compulsion.

617 (Ala. Crim. App. 1983) (evidence of minor bruises on victim's legs after sexual contact presented a jury question as to whether intercourse was by forcible compulsion where victim was raped in her jail cell and testified her attacker held her down and that she did not scream; the defendant testified act was consensual).

We cannot say that, based on the evidence presented, no reasonable finder of fact could conclude that the force exercised here was more than is required to achieve penetration and was directed toward overcoming the victim's resistance.

The judgment of the trial court is affirmed.

PEKELIS, J., concurs.

FORREST, J. (dissenting)—The question in this case is not whether C was raped. She was. The question is whether McKnight's conduct makes him guilty of rape in the second degree or of rape in the third degree. The majority's decision obliterates any meaningful distinction between the two degrees of rape and therefore I dissent.

The Legislature has defined rape in the second degree as a class B felony that occurs when a "person engages in sexual intercourse with another person . . . [b]y forcible compulsion . . ." RCW 9A.44.050(1)(a). "Forcible compulsion" is defined as "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." Former RCW 9A.44.010(5). Rape in the third degree is defined as a class C felony that occurs when sexual intercourse proceeds after the victim's "lack of consent was clearly expressed by the victim's words or conduct", RCW 9A.44.060(1)(a).

Obviously, the principal difference in consequences arising from the crimes is the sanction imposed. Rape in the second degree carries a seriousness level of eight, with a standard range of 21 to 27 months' confinement for an adult defendant with a zero offender score, and 30 to 40

weeks for a juvenile, as in this case. Rape in the third degree carries a seriousness level of five, with a standard range of 9 months' to 12 months' confinement for an adult with a zero offender score and 5 to 10 days' for a juvenile. The statutory scheme discriminates between the seriousness of various degrees of rape by attaching differing penalties. The statutes should be interpreted to preserve and effectuate this distinction.

Sexual intercourse is given a broad definition. In RCW 9A.44.010:

(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

The breadth of this definition makes it particularly important to maintain a clear distinction between the two degrees of rape to avoid elevating relatively minor acts of sexual misconduct to a class B felony.

When applied to the facts of this case, the majority's interpretation removes any meaningful distinction between the two degrees of rape. The only evidence of "resistance" is that C told the defendant to stop kissing her and to stop disrobing her. The only evidence of physical force "which overcomes resistance" is that McKnight slowly pushed C onto the couch and lay on top of her. C's actions met the standard of third degree rape, in that her lack of consent was clearly expressed by her "words or conduct." McKnight's actions appear indistinguishable from the type and amount of physical force necessary to proceed with sexual intercourse in the absence of consent. Indeed, it is hard to think of factual situations which would constitute

rape in the third degree, but not rape in the second degree, under the majority's interpretation.

To preserve the distinction between the two degrees, there must be something more than words and conduct manifesting lack of consent. Physical resistance is not necessary in all cases to constitute "resistance". "Forcible compulsion" is expressly defined to include "a threat, express or implied, that places a person in fear of death or physical injury to herself . . ." If a victim believes that resistance would result in physical injury, physical resistance is not required. However, in this case the trial judge specifically found that "I do not believe that there was a threat express or implied that placed her in fear." C's testimony was that she was never afraid that McKnight was actually going to injure her. He never hit her or threatened to hit her. He never told her not to tell anyone what had happened. She never struggled in the course of the rape.

In light of C's testimony, the majority's emphasis on the fact that she was "physically weak" and "unsophisticated" is unclear. Clearly, the evidence did not demonstrate that she was "physically helpless or mentally incapacitated", which would elevate McKnight's actions to rape in the second degree regardless of force or resistance. RCW 9A.44-.050(1)(b); RCW 9A.44.010(4), (5). Likewise, the evidence that C felt "scared" does not raise the crime from third degree to second degree. C did not elaborate as to what or who she was scared of nor did the State inquire further on this point. Plainly, if the record established that she was "scared" of physical violence, this would sustain rape in the second degree.

In support of its formulation of the resistance requirement, the majority relies extensively on *People v. Barnes,* 42 Cal. 3d 284, 721 P.2d 110, 228 Cal. Rptr. 228 (1986). This reliance is misplaced. Although I do not quarrel with the California court's discussion of historical attitudes toward rape, the crucial fact is that the California Legislature has eliminated the resistance requirement from the statute and substituted the requirement that the acts be taken against the victim's will. The Washington Legislature

has not done so; indeed, this is precisely the requirement of rape in the third degree as defined by the Washington Legislature. In the determinate sentencing scheme established by the sentencing reform act, it is particularly important for the court to preserve the distinction between various levels of crimes. This enables the Legislature to properly relate the penalty to the crime through the seriousness level attached thereto.

In finding the victim's acts in this case amount to the statutorily required presence of "resistance", the majority blurs, if not erases, the distinction between the two legislatively defined degrees of the crime. The facts of this case fit naturally into the definition of rape in the third degree. Rape in the third degree was originally assigned a seriousness level of three, but upon further experience and reflection, the Legislature established the current seriousness level of five. If the present penalty for that crime is not sufficiently harsh, it is for the Legislature to adjust the penalty, rather than for this court to expand the scope of rape in the second degree.

I would reverse and remand for sentencing on rape in the third degree.