**FILED**
**OCT 16, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31022-1-III |
| Respondent, | ) | |
| | ) | |
| v | ) | |
| | ) | |
| DAVID HENRY ENDRES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — David Endres challenges his second degree rape conviction, arguing that the court should have permitted discovery of the victim's mental health records and that the evidence was insufficient to support the jury's verdict. We affirm.

## FACTS

The incident underlying the rape charge occurred in 2005. D.M. and a friend attended a party in Yakima one day. D.M. was not enjoying the party and wanted to leave. Her friend took D.M. to the nearby apartment of her friend named Angel and left D.M. with him while she returned to the party. D.M. did not know Angel.

Angel latched the door and walked D.M. to his bed. While she said "no," he sat her on the bed. He then took off her clothing while she continued to tell him "no." He then proceeded to have sexual intercourse with her despite her continued protestations.

The two did not fight, but Angel did press her down onto the bed from a sitting position in order to have intercourse with her. When Angel was finished, D.M. grabbed one of Angel's shirts and fled the apartment, running to her mother's house, which was in the neighborhood.

D.M.'s mother took her to the hospital and evidence was collected, but Angel was not found. Some years later, the evidence was sent to the Washington State Crime Laboratory for testing. A male DNA profile was developed that fit David Endres, a man with two prior convictions for sex offenses. Police arrested Mr. Endres and he spoke with them. He admitted once living in Yakima and that his nickname was Angel. A swab was obtained from Mr. Endres to confirm the DNA profile.

The prosecutor filed one charge of second degree rape by forcible compulsion in November 2010. Defense counsel filed a motion seeking D.M.'s criminal, medical, and mental health records in order to impeach her credibility. The defense knew that D.M. had a history of medical and mental health issues, but did not know specific information about them. At the time of the rape, D.M. had left a half-way house facility that served as an alcohol detoxification center and a mental health stabilization center. When D.M. was located in 2010, she was a patient at Eastern State Hospital (ESH).

The defense argued that it needed the mental health records to determine if D.M. had a condition that affected her ability to accurately recall events and tell the truth. The

2

trial court eventually entered an order directing ESH to provide its records for *in camera* review by the presiding judge.

After reviewing the records, the court denied discovery and explained that "none of the medical records submitted for review have any factual relationship with the charges in this case." The defense moved for reconsideration, arguing that the court did not consider all relevant criteria and that it had learned that D.M. had been a ward of the state at various times since childhood due to her mental health issues. The court denied reconsideration by written ruling. The defense was not permitted to inquire about D.M.'s mental health history during trial.

The defense also challenged D.M.'s competency to testify. The court held a pretrial hearing at which both counsel questioned her about the facts of the case as well as her mental health matters. She testified that she was at ESH in 2010 due to anxiety and PTSD (post-traumatic stress disorder) and described the effects of those conditions on her in 2010 as well as her condition at the time of the rape. The trial judge found D.M. competent to testify, noting that she had tracked the sometimes confusing questioning well for 40 to 45 minutes and gave appropriate answers. Her lack of memory of some details from seven years previously did not render her incompetent.

The case was tried to a jury. At the conclusion of the prosecution's case, the defense moved for dismissal due to lack of evidence of forcible compulsion. The trial court denied the motion and the jury returned a verdict of guilty. The defense moved for

a new trial on the basis of its previous motions concerning the victim's mental health. The court denied the motion. Mr. Endres subsequently timely appealed from the judgment and sentence.

## ANALYSIS

This appeal challenges the trial court's rulings concerning D.M.'s competency and her mental health records, as well as the sufficiency of the evidence to support the verdict. We will address those challenges in that order.

*Discovery Related To Mental Health*

Mr. Endres argues that the court erred in denying discovery of D.M.'s mental health records and in denying his motion for a mental health evaluation of D.M. prior to her testimony.[1] We conclude the trial court did not abuse its discretion in these rulings.

Discovery in criminal cases is regulated by CrR 4.7. A trial judge has broad authority under the rule to control the discovery process and may issue protective orders, excise materials, and impose sanctions for failure to abide by the rules. CrR 4.7(h)(4),

---

[1] In his personal Statement of Additional Grounds, Mr. Endres raises claims concerning the denial of discovery, the sufficiency of the evidence, the credibility of the victim, and misconduct involving a witness indicating Mr. Endres' DNA profile had been found in the CODIS records. The first two claims were adequately presented by counsel and do not need to be re-addressed here. RAP 10.10(c). The credibility argument fails because appellate courts do not second-guess a fact finder's credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The final claim fails as there was no evidence of why the defendant's DNA was in the records system, so there was no mention of his prior criminal history to the jury.

4

(5), (7). The judge may also conduct *in camera* proceedings. CrR 4.7(h)(6). The scope of discovery is within the discretion of the trial court and will be reversed only for manifest abuse of discretion. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Mr. Endres argues that the trial court manifestly abused its discretion in denying him the materials seen by the court *in camera*, resulting in such significant harm to his defense that he is entitled to a new trial with the ESH records in hand. While we agree that any discovery error in this regard likely harmed the defense since D.M. was the sole witness to the crime, there first must be a showing of error. Mr. Endres has not met his burden in that respect.

Our review is hampered by the fact that the records considered at the *in camera* proceeding are not part of the record on appeal, leaving us unable to countermand the trial court's view of the record. *See* CrR 4.7(h)(6). Nonetheless, what we can discern from the record indicates that the trial court did not abuse its discretion. The court had the testimony of D.M., as well as the argument of counsel, to explain why D.M. was at ESH in 2010. If there was something in the hospital's records that conflicted with her testimony, we have no doubt that the court would have noted and disclosed the information. For instance, if D.M. was admitted to ESH for treatment of something other

than anxiety and PTSD, as she testified, the court was in a position to advise the parties and release that information.

The fact that a witness has medical or mental health history that might be of interest to the opposing side does not mean that it is material evidence that must be disclosed. *State v. Mines*, 35 Wn. App. 932, 937-40, 671 P.2d 273 (1983). The doctor-patient privilege does apply to witnesses. RCW 5.60.060(4). Similarly, sexual assault victims have a privilege in their communications with counselors. RCW 5.60.060(7). In order to balance these interests, courts may use the *in camera* procedure of CrR 4.7(h)(6) to consider whether there is material and disclosable evidence. *Mines*, 35 Wn. App. at 938-39.

The court followed the proper procedure in this case by reviewing the records *in camera*. The fact that a party can articulate a basis for potentially discovering privileged evidence does not mean that there actually is material evidence available. *E.g.*, *State v. Kalakosky*, 121 Wn.2d 525, 543-44, 852 P.2d 1064 (1993); *Blackwell*, 120 Wn.2d at 828; *Mines*, 35 Wn. App. at 939. Here, the defense articulated why there might be something in the mental health records that could be material and the court responded by conducting the *in camera* review. Upon determining that there was no material evidence, the court declined to order disclosure. Since the defense did not establish that material evidence was necessarily included in the records, the trial court could not have abused its discretion.

6

Mr. Endres also argues that the court erred in failing to order a mental health evaluation of the victim. Assuming that there is authority that would permit such an invasive order, the defense failed to establish any basis for granting that relief. The court permitted an extensive pretrial examination of D.M. and found her competent to testify. It is the burden of the party challenging competency to establish a basis for believing the witness is not competent. *State v. Coley*, 180 Wn.2d 543, 552, 326 P.3d 702 (2014). The court's rulings are reviewed for abuse of discretion. *Id.* at 551. The trial court considered the victim's lengthy testimony, her appropriate answers, and her overall behavior before finding her competent to testify. There was no abuse of discretion in denying the request for an evaluation.

The trial court quite appropriately addressed the defense challenges to D.M.'s past and current mental state. There was no abuse of discretion in denying the requested discovery.

*Sufficiency of the Evidence*

Mr. Endres also challenges the sufficiency of the evidence to support the forcible compulsion element of the second degree rape charge. The evidence did support that element.

As charged here, second degree rape requires proof that the defendant, in the State of Washington, did engage in sexual intercourse by forcible compulsion. RCW 9A.44.050(1)(a). "Forcible compulsion" means "physical force which overcomes

resistance." RCW 9A.44.010(6) (partial). Our case law clarifies that the force in question must be other than that involved in the act of intercourse itself. *E.g.*, *State v. McKnight*, 54 Wn. App. 521, 527, 774 P.2d 532 (1989).

The victim expressed her lack of consent and did not willingly submit to the unwanted intercourse. She also did not attempt to physically resist the defendant. The question then is whether the State established the use of some force to overcome the resistance other than that involved in the sexual penetration. It did. *McKnight* involved very similar facts and is instructive here.

There the defendant and victim were sitting on the living room "couch." 54 Wn. App. at 522. The defendant then "slowly" pushed the victim "down onto the couch." *Id.* Then, despite her expressed desire that he stop, the defendant disrobed the victim and engaged in intercourse with her. *Id.* at 522-23. While noting that reasonable minds could differ on the topic, this court concluded that these actions could establish "force over and above what is necessary to achieve intercourse and that these acts were employed to overcome" the victim's resistance. *Id.* at 528.

The facts of this case are remarkably similar. Despite D.M. saying "no," the defendant led her to the bed and slowly pushed her down from a sitting position. He then removed her clothes and held her down while he engaged in intercourse. The evidence here was at least as strong, if not a little stronger, than that described in *McKnight*. The record thus supported the jury's determination.

8

No. 31022-1-III
*State v. Endres*

The evidence was sufficient. We affirm the conviction.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

9