# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57999-5-II |
| Respondent, | |
| v. | |
| BRANDON WILLIAM HARM, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Brandon W. Harm, when he was around 14 years old, sexually penetrated F.M.G., who was alleged to be 11 years old, and continued this behavior multiple times over the course of two years.  More than 10 years later, when Harm was 25 years old, he was convicted of one count of first degree child rape, one count of second degree rape, and one count of third degree rape.

Harm appeals, arguing that (1) there was insufficient evidence to support his convictions, (2) the trial court failed to meaningfully consider the mitigating qualities of Harm's youth at sentencing as required by *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), (3) the trial court erred in imposing an indeterminate sentence with respect to his first degree child rape conviction, and (4) the $500 victim penalty assessment (VPA) must be stricken from his judgment and sentence.  In addition, Harm brings multiple claims in a statement of additional grounds (SAG).

We affirm Harm's first degree child rape and second degree rape convictions. However, we reverse Harm's third degree rape conviction because of insufficient evidence. We also hold that the trial court erred at sentencing by failing to meaningfully consider the mitigating qualities of Harm's youth and by imposing an indeterminate sentence for his first degree child rape conviction. We further conclude that the VPA can no longer be imposed.

Thus, we reverse Harm's third degree rape conviction and remand for the trial court to dismiss the third degree rape charge with prejudice and for resentencing.

## FACTS

### I. BACKGROUND, TRIAL, AND VERDICT

In 2011, Harm and F.M.G. met when Harm was 14 years old and F.M.G. was 11 years old (Harm was approximately 33 months older than F.M.G.). Between 2011 and 2013, F.M.G. went over to Harm's house several times a week with her mother. Harm and F.M.G. would go upstairs to Harm's bedroom while Harm's parents and F.M.G.'s mother would do drugs. While Harm and F.M.G. were upstairs during these visits, Harm penetrated F.M.G. with his penis multiple times.

Many years later, in 2019, F.M.G. reported Harm's actions to law enforcement. Following law enforcement's investigation, which included F.M.G. participating in a forensic interview, the State charged Harm with two counts of first degree child rape, one count of second degree rape, and one count of third degree rape.

In December 2022, the case proceeded to a jury trial.

The State called F.M.G. as its first witness. According to F.M.G., one day when they were together in Harm's bedroom, Harm showed F.M.G. his penis. Then, the next time that F.M.G.

went over to Harm's house, Harm asked F.M.G. to "perform . . . oral sex." Verbatim Rep. of Proc. (VRP) at 203. F.M.G. testified that she was uncomfortable, but she went through with it.

F.M.G. initially testified that she was either 11 or 12 years old when Harm first put his penis in her mouth and could not remember precise dates of when this occurred. But later during her testimony, the State asked F.M.G. to read aloud a portion of her forensic interview transcript in which she stated that she "was 11 the first time it happened." VRP at 288. In response to this description from her forensic interview, the State asked F.M.G. to clarify to what she was referring when she said she was 11 years old "the first time it happened." VRP at 288. F.M.G. clarified that she was referring to when Harm put his penis in her mouth. Shortly thereafter, F.M.G. again confirmed that she was 11 years old—F.M.G. testified that she

knew that it started when [she] was 11. That—[was] the first time.

VRP at 290.

After Harm placed his penis in F.M.G.'s mouth for the first time, he continued to do so every time F.M.G.'s mother brought her over to Harm's house, which was several times a week.

F.M.G. testified about one particular occasion when Harm put his penis in her mouth. F.M.G. explained that on that occasion she moved her head backwards to convey to Harm that she did not want to continue and "wanted out of that situation." VRP at 221. But instead of stopping, Harm responded by moving "his body closer to [F.M.G.] and [moving] [her] head back closer to him." VRP at 221.

F.M.G. testified that several months later, Harm suggested that he put his penis in F.M.G.'s anus. Although F.M.G. agreed to engage in the activity, she explained that she did not want to do

so. Thereafter, Harm engaged in that activity each time they were together. F.M.G. was 12 years old at the time.

F.M.G. next described what happened on one particular occasion when Harm was anally penetrating her. She asked him to stop and tried to turn her body around. However, Harm did not stop. Instead, Harm "strengthened his positioning" and leaned his body further into F.M.G. VRP at 234.

Following the conclusion of F.M.G.'s testimony, the State called F.M.G.'s mother, two law enforcement officers, a forensic interviewer, and one of F.M.G.'s friends from middle school to testify. Thereafter, the State rested.

After the State rested, Harm moved for a directed verdict on all counts. In response, the State conceded that there was insufficient evidence for one of the two first degree child rape counts. But the State argued that it had met its initial burden on all of the remaining counts. The trial court agreed with the State and dismissed one of the two counts of first degree child rape, but permitted all of the remaining counts to proceed.

The defense then began its case. Harm did not testify, and the defense did not present any other witnesses. But Harm offered for admission an exhibit containing a series of social media messages between Harm and F.M.G. The trial court admitted the exhibit without objection.

The jury found Harm guilty of one count each of first degree child rape, second degree rape, and third degree rape.

II. SENTENCING AND APPEAL

The case proceeded to sentencing. The sentencing involved two unrelated cases—Harm's rape convictions in this case and a second degree assault with sexual motivation conviction from another incident when Harm was much older.

The parties argued for very different sentences. The State requested that the trial court impose a standard range sentence of 288 months based on Harm showing a pattern of sexual violence. Defense counsel requested an exceptional downward sentence of 15 to 36 months. Defense counsel based their request on Harm's young age and the theory that F.M.G. was a "willing participant." VRP at 462.

During defense counsel's argument, the trial court asked defense counsel about Harm's *current* age. Defense counsel responded that Harm was 25 years old. The following exchange occurred:

> [Trial Court]: How old is your client now, is he 26?
>
> [Defense counsel]: He's 25.
>
> [Trial Court]: So, he's still under the *Houston-Sconiers* umbrella of not being a mature adult. He's still in their eyes.

VRP at 462.

After this exchange, defense counsel continued to argue that Harm's age justified an exceptional sentence downward. Defense counsel contended that Harm's brain was not fully developed when he raped F.M.G. Defense counsel explained that Harm was immature at the time of the offenses and that he was "operating on . . . impulses." VRP at 462. Defense counsel further

argued that due to Harm's age, he was not able to appreciate any facial expressions or body movement from F.M.G. indicating that she wanted to stop having sex.

Following the arguments, the trial court explained its thoughts about the case. The trial court noted that the case was one of the "more difficult cases" that it had presided over. VRP at 472. The trial court then commented about how, in its view, the parents' lack of supervision contributed to the crime and the result was horrific. The trial court remarked,

> Probably the root of the problem here is that the parents absolutely abandoned their duties to these two kids at the time of all of this was happening. And, the result is horrific.

VRP at 472. In addition, the trial court expressed its belief that F.M.G. was significantly younger than Harm at the time of the offenses, stating,

> I have no doubt that she was significantly younger than you. She testified that she was 11 when she started. There's a reason the law makes that a crime.

VRP at 472-73.

The trial court then referenced Harm's youth for the first time, stating,

> I also take into account that this happened as a juvenile. And, he didn't get caught at the time or he would have gone through the juvenile system.

VRP at 473.

The trial court noted that the rapes were not isolated incidents and represented a pattern of conduct, stating,

> It was an ongoing pattern of conduct that evolved from her being unable to consent due to age, to really a predatory relationship.
>
> I'm really concerned that you don't understand the concept of consent and you need to have sex offender treatment to figure that out. That is one of the things that will be a condition of the prison sentence.

VRP at 473.

The trial court imposed a low-end standard range *indeterminate* sentence of 240 months to life on the first degree child rape and second degree rape counts and 96 months on the third degree rape count, to be served concurrently. Neither party objected to the trial court's indeterminate sentence on the first degree child rape count.

In its final comments explaining its decision, the trial court stated that its sentence "*takes into account that he was a juvenile when this happened.*" VRP at 474 (emphasis added). The trial court also reiterated that F.M.G.'s mother failed her and left her to be with a predator who was two or three years older at the time. The trial court stated,

> So, 240 months plus all the conditions as requested. A low[-]end sentence is in no way diminishing anything [F.M.G.] testified to. I believe that what she said is accurate and that essentially her mother failed her in that case and left her to be the victim of a predator and the predator[] wasn't but, you know, *two or three years older at the time*. But, let alone, it is a predatory relationship. So, that will be the sentence of the court.

VRP at 474 (emphasis added). The trial court made no other comments about Harm's youth or its impact on the crimes.

Harm appeals.

ANALYSIS

Harm makes four main arguments. First, Harm argues that there was insufficient evidence to support his convictions. Second, Harm argues that the trial court failed to meaningfully consider the mitigating factors of Harm's youth at sentencing. Third, Harm argues that the trial court erred in imposing an indeterminate sentence with respect to his first degree child rape conviction. And fourth, Harm argues that the trial court erroneously imposed the VPA.

In his SAG, Harm raises numerous claims of error, including prosecutorial misconduct, a *Brady*[1] violation, ineffective assistance of counsel, judicial bias, and vindictive prosecution.

We address each argument in turn.

## I. SUFFICIENCY OF THE EVIDENCE

Harm argues that there was insufficient evidence to support his three rape convictions for three different reasons. He argues there was insufficient evidence for *first* degree child rape because the State's evidence about F.M.G.'s age at the time of the first sexual encounter was only general and lacked sufficient specificity. Harm argues that there was insufficient evidence for *second* degree rape because the State did not prove that there was forcible compulsion. Finally, Harm contends that there was insufficient evidence for *third* degree rape because the State did not prove that F.M.G. withdrew her consent to have Harm's penis in her mouth.

## A. STANDARD OF REVIEW

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a verdict if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, they admit the truth of the State's evidence and we draw all reasonable inferences in favor of the State. *Id.* at 265-66. And we defer to the trier of fact on issues of conflicting testimony,

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

## B.  FIRST DEGREE CHILD RAPE

Harm argues that the State introduced only general, nonspecific, testimony about F.M.G.'s age at the time that the first sexual encounter occurred, which was insufficient to sustain his first degree child rape conviction.  We disagree.

" 'A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.' "  *State v. T.J.M.*, 139 Wn. App. 845, 849, 162 P.3d 1175 (2007) (quoting former RCW 9A.44.073(1) (1988)), *review denied*, 163 Wn.2d 1025 (2008).

Harm supports his argument by characterizing F.M.G.'s testimony as her being unsure of when the first sexual encounter occurred.  According to Harm, because F.M.G. did not provide a specific date or a sufficient range of when the encounter occurred, the State failed to establish beyond a reasonable doubt that she was less than 12 years old at the time of the sexual encounter.

Harm mischaracterizes the testimony.  It is true that, at first, F.M.G. testified that she was either 11 or 12 years old when Harm first put his penis in her mouth.  But she later clarified that she was actually 11 years old when the sexual encounters began.  And while F.M.G. could not remember precise dates when Harm first put his penis in her mouth, she testified she "knew that it started when [she] was 11.  That—[was] the first time."  VRP at 290.  And it is uncontested that Harm was approximately 33 months older than F.M.G.

Viewing all the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that F.M.G. was under 12 years old when Harm first put his penis in F.M.G.'s mouth and that Harm was at least 24 months older than her at the time. Thus, Harm's argument that there was insufficient evidence to support his first degree child rape conviction fails.

C.  SECOND DEGREE RAPE

Harm next argues that there was insufficient evidence to support his second degree rape conviction because the State did not prove that Harm used forceable compulsion to overcome F.M.G.'s resistance.  Harm characterizes F.M.G.'s behavior and Harm's response as "nothing more than movement by two kids having sex."  Appellant's Opening Br. at 32.  We disagree.

A person is guilty of second degree rape when the person engages in sexual intercourse with another person by forcible compulsion.  Former RCW 9A.44.050(1)(a) (2007).  Forcible compulsion includes physical force which overcomes resistance.  Former RCW 9A.44.010(6) (2007).  The required physical force must have been force that was " 'directed at overcoming the victim's resistance and was more than that which is normally required to achieve penetration.' " *State v. Gene*, 20 Wn. App. 2d 211, 224, 499 P.3d 214 (2021) (quoting *State v. McKnight*, 54 Wn. App. 521, 528, 774 P.2d 532 (1989)).  "The resistance that forcible compulsion overcomes need not be physical resistance, but it must be reasonable resistance under the circumstances." *Id.*

Here, there was sufficient evidence of forceable compulsion.  F.M.G. testified that on one of the occasions that Harm was anally penetrating her, she asked him to stop and tried to turn her body around.  Not only did Harm not stop, he "strengthened his positioning" and leaned his body further into hers.  VRP at 234.  Viewing this evidence in the light most favorable to the State, the

reasonable inference is that Harm overcame F.M.G.'s resistance and used greater force than that which is normally required to achieve penetration by strengthening his positioning and leaning his body further into hers. Harm's argument fails.

D.  THIRD DEGREE RAPE

As for Harm's third degree rape conviction, Harm argues that there is insufficient evidence to support this count because F.M.G. did not clearly express her lack of consent to Harm putting his penis in her mouth.

A person is guilty of third degree rape when the victim did not consent to sexual intercourse and such lack of consent was clearly expressed by the victim. Former RCW 9A.44.060(1)(a) (1999). The statute defines third degree rape as when

> such person engages in sexual intercourse with another person, not married to the perpetrator . . . [w]here the victim *did not consent* as defined in [former] RCW 9A.44.010(7) [1993], to sexual intercourse with the perpetrator and such *lack of consent* was *clearly expressed* by the victim's words or conduct.

*Id.* (emphasis added).

" 'Consent' means that at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." Former RCW 9A.44.010(7) (2007). " 'Clearly expressed' is not defined by the statute, but 'clearly' ordinarily means something asserted or observed leaving no doubt or question and 'expressed' ordinarily means to make known an emotion or feeling." *State v. Higgins*, 168 Wn. App. 845, 854, 278 P.3d 693 (2012) (citing *Webster's Third New International Dictionary* 420, 803 (1993)), *review denied*, 176 Wn.2d 1012 (2013). In determining whether there was consent,

we focus on the victim's words and actions, not the defendant's subjective assessment of what is being communicated. *Id.*

Here, according to Harm, there is insufficient evidence to find lack of consent because F.M.G. only testified that she moved "her head backwards," and that she did not say "no" or otherwise provide any indication she was not a willing participant. Appellant's Opening Br. at 43. Because the act of moving her head backwards did not "clearly express[]" a lack of consent, Harm argues we should reverse his conviction for third degree rape. Appellant's Opening Br. at 43.

We agree with Harm. Even when viewed in light most favorable to the State, the subtle movements described by F.M.G., without more, fail to rise to the level necessary to convey that she "clearly expressed" her lack of consent. Thus, there was insufficient evidence to support Harm's third degree rape conviction.

## II. YOUTH AS A MITIGATING FACTOR

Harm next argues that resentencing is required because the trial court did not meaningfully consider the mitigating qualities of Harm's youth at sentencing as required by *Houston-Sconiers*. We agree.

"[C]hildren are different from adults" for sentencing purposes. *Houston-Sconiers*, 188 Wn.2d at 18. Although the trial court has broad discretion to impose an appropriate sentence, it also must ensure that proper consideration is given to mitigating qualities of youth. *Id.* at 21; *see also In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 596, 520 P.3d 939 (2022) (trial courts may exercise discretion to sentence below adult standard range based on juvenile's diminished culpability).

In *Houston-Sconiers*, our Supreme Court required trial courts to consider specific factors when sentencing any juvenile in adult court, including: (1) the mitigating circumstances of youth, including the juvenile's " 'immaturity, impetuosity, and failure to appreciate risks and consequences,' " (2) the juvenile's environment and family circumstances, (3) the juvenile's participation in the crime and the possible effects of familial and peer pressure, (4) "how youth impacted any legal defense," and (5) "any factors suggesting that the child might be successfully rehabilitated." *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller v. Alabama*, 567 U.S. 460, 477, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)).

Meaningful consideration of the *Houston-Sconiers*' five factors requires trial courts to do more than merely recite the differences between juveniles and adults. *State v. Delbosque*, 195 Wn.2d 106, 121, 456 P.3d 806 (2020). The trial court must meaningfully consider the differences between juveniles and adults, including " 'how those differences apply to the facts of the case.' " *Id.* (quoting *State v. Ramos*, 187 Wn.2d 420, 434-35, 387 P.3d 650 (2017)).

Youth does not automatically entitle every juvenile defendant to an exceptional downward sentence. *State v. Anderson*, 200 Wn.2d 266, 285, 516 P.3d 1213 (2022). A trial court is not required to impose an exceptional sentence below the standard range if it considers the qualities of youth at sentencing and determines that a standard range is appropriate. *See Houston-Sconiers*, 188 Wn.2d at 21. Nonetheless, when the trial court fails to meaningfully consider the mitigating qualities of youth, we remand for resentencing. *Id.* at 34. We review sentencing decisions for an abuse of discretion. *Delbosque*, 195 Wn.2d at 116.

Here, because Harm was a juvenile when he committed his crimes, the trial court was obligated to meaningfully consider the mitigating qualities of his youth in imposing its sentence. The record fails to show that the trial court undertook this obligation.

The trial court said very little about Harm's youth in its sentencing decision; it only made brief references to the lack of parental supervision and the juvenile justice system. The trial court opined that the parents' lack of supervision was the "root" of what created the conditions that allowed Harm to commit the rapes. VRP at 472. And the trial court referenced Harm's youth in the context of the juvenile justice system, stating that, if he had been charged when the crimes occurred, he would have gone through the juvenile system. The trial court stated,

> I also take into account that this happened as a juvenile. And, he didn't get caught at the time or he would have gone through the juvenile system.

VRP at 473. The trial court also characterized Harm as a "predator" even though he was only "two or three years older [than F.M.G.] at the time." VRP at 474.

And finally, the trial court concluded its sentencing decision by declaring that it was taking his youth "into account":

> [T]he sentence that I'm imposing . . . . *takes into account that he was a juvenile when this happened.*

VRP at 474 (emphasis added). These were the trial court's only references to Harm's youth when he committed the crimes against F.M.G.[2]

The State acknowledges that the trial court did not explicitly address the *Houston-Sconiers* factors. But it contends that the trial court nonetheless meaningfully considered the mitigating

---

[2] The trial court's only mention of *Houston-Sconiers* was when it asked about Harm's current age at the time of sentencing.

qualities of his youth. As support, the State points to the mitigation evidence presented by the defense, the trial court's comments about the facts of the case, Harm's youth at the time of the offense, and his family circumstances. By considering these things together, the State contends that the trial court properly exercised its discretion in imposing a standard-range sentence.

It is true that the trial court concluded its sentence by stating it took "into account" that Harm was a juvenile. VRP at 474. And it is true that the trial court alluded to the role that Harm and F.M.G.'s parents lack of supervision played in allowing the offenses to occur.

But that was it. Looking at the trial court's sentencing as a whole, it cannot be said that the record demonstrates that the trial court meaningfully considered any of *Houston-Sconiers*' five factors. The trial court merely mentioned Harm's youth without offering any explanation of *how* the mitigating circumstances of Harm's youth, including his immaturity, impetuosity, and failure to appreciate risks and consequences may have contributed to his crimes (factor 1). *Houston-Sconiers*, 188 Wn.2d at 23. While the trial court referenced a lack of parental supervision, it did not otherwise appear to consider Harm's environment or family circumstances or the possible effects of familial and peer pressure (factors 2 and 3). *Id.* Nor did the trial court address the impact of youth on Harm's legal defense or his capacity for rehabilitation (factors 4 and 5). *Id.*

While the level of detail necessary to be included in the record of the trial court's consideration of each of these factors will certainly vary depending on the particular case, the trial court needed to do more here. *See In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020) (explaining that the trial court's failure to say anything about whether the defendant's youth mitigated his culpability does not constitute meaningful consideration of the mitigating qualities of youth). Because the record does not demonstrate a meaningful

consideration of the mitigating factors of Harm's youth by the trial court as required by *Houston-Sconiers*, we remand for resentencing.

III.  INDETERMINATE SENTENCE

Harm argues that the trial court exceeded its statutory authority by imposing an indeterminate sentence with respect to his first degree child rape conviction.  Harm argues the law does not permit an indeterminate sentence for juvenile offenders.  The State concedes the error.

The sentences of certain sex offenders are subject to RCW 9.94A.507.  Offenders subject to RCW 9.94A.507 are sentenced to indeterminate sentences within the mandatory minimum sentence and the statutory maximum sentence for the crime.  RCW 9.94A.507(3)(a), (b).  Convictions for first degree child rape are subject to indeterminate sentences.  RCW 9.94A.507(1)(a)(i).

However, the statute does not apply to first degree child rape offenders who were 17 years of age or younger at the time of the crime.  RCW 9.94A.507(2).  The relevant subsection of the statute provides,

> An offender convicted of rape of a child in the first or second degree or child molestation in the first degree who was *seventeen years of age or younger* at the time of the offense shall not be sentenced under this section.

RCW 9.94A.507(2) (emphasis added).

Here, Harm committed the offense of first degree child rape when he was around 14 years old.  Consequently, Harm's first degree rape conviction was not subject to an indeterminate sentence.  RCW 9.94A.507(2).  Neither party raised the issue at sentencing, and the trial court imposed an indeterminate sentence on this rape conviction.  We accept the State's concession that

this was error. Upon resentencing, the trial court must impose a determinate sentence on this count.[3]

IV. VPA

Harm argues that the VPA should be stricken because the VPA is no longer authorized by statute. The State concedes that the VPA should be stricken. We accept the State's concession that the VPA should not be imposed.

Effective July 1, 2023, the VPA is no longer authorized for indigent defendants. LAWS OF 2023, ch. 449 § 1; RCW 7.68.035(4). This change applies to Harm because the trial court found him indigent and his case is still on direct appeal. *State v. Matamua*, 28 Wn. App. 2d 859, 878-79, 539 P.3d 28 (2023), *review denied*, 2 Wn.3d 1033 (2024). Accordingly, on remand, the trial court shall not impose the VPA.

V. SAG CLAIMS

In his SAG, Harm makes numerous claims, including that the State committed prosecutorial misconduct and committed a *Brady* violation, that he received ineffective assistance of counsel, that the judge was biased, and that he was a victim of vindictive prosecution. We either reject or are unable to review each SAG claim.

---

[3] Although the parties agree that the trial court erred, they disagree about the appropriate remedy. Harm suggests that he is entitled to resentencing; the State suggests merely correcting the judgment and sentence is the appropriate remedy. But because Harm will be resentenced in any event for the trial court to meaningfully consider the mitigating qualities of Harm's youth, we do not further address this issue.

A.  SAG CLAIMS 1 AND 8: PROSECUTORIAL MISCONDUCT

In SAG claim 1, Harm claims that the State committed prosecutorial misconduct by appealing to the jury's passions and prejudices when it referred to F.M.G. as "a little girl with pigtails" in closing argument.  SAG at 1.  In SAG claim 8, Harm also claims that the State committed prosecutorial misconduct by scheduling the trial in close proximity to the December holidays.  Neither claim has merit.

Prosecutors have wide latitude to argue reasonable inferences from the evidence in closing argument.  *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011); *see also In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 167, 410 P.3d 1142 (2018) ("Prosecutors are free to argue their characterization of the facts presented at trial and what inferences these facts suggest in closing argument.").

Here, with respect to Harm's first SAG claim, F.M.G.'s mother described F.M.G. as "a little girl with pigtails" in response to a question asking her to describe F.M.G.'s physical appearance at the time of the rapes.  VRP at 321.  There was no objection to this testimony.  In closing argument, the State referred to the testimony of F.M.G.'s mother to highlight the age difference between Harm and F.M.G.  The State argued:

> Three years when you're a child, when you're young, can be a gulf in development and in experience.  Her mom—her mom told you that when—when they first started going over to [Harm's] apartment, she was *a little kid with pigtails*.  And again, he was a high school boy who knew about sex and knew what he wanted. He took advantage of the situation.  He took advantage of her.  He took what he wanted and those few times where she managed to say no or express with her body that she wanted him to stop, he didn't.

VRP at 392 (emphasis added).

Harm fails to show that these remarks were an improper appeal to the passions and prejudices of the jury. The State was merely repeating the descriptive phrase used by F.M.G.'s mother in her testimony. Without more, referencing admitted testimony is not improper.[4]

And as for Harm's SAG claim 8, regarding the scheduling of the trial in close proximity to the December holidays, Harm fails to explain how the State's actions, to the extent they contributed to this scheduling, were improper. This prosecutorial misconduct claim fails.[5]

B. SAG CLAIMS 2, 3, 7: EVIDENCE OUTSIDE THE RECORD (*BRADY* VIOLATION AND INEFFECTIVE ASSISTANCE OF COUNSEL)

In SAG claim 2, Harm claims that the State committed a *Brady* violation during F.M.G.'s cross-examination when the State objected to a question from defense counsel. During F.M.G.'s cross-examination, defense counsel asked F.M.G. whether she thought a counselor was a mandatory reporter. The State objected and the trial court sustained the objection. According to Harm, the State's objection "suppressed material evidence to the defense." SAG at 3.

Because the objection was sustained, it is unclear how any response would have created exculpatory evidence, especially given the irrelevance of F.M.G.'s testimony on issues of mandatory reporting. Indeed, Harm fails to inform us how any possible response would have supported a claim of error. Therefore, we will not consider it. RAP 10.10(c) (explaining that we

---

[4] As part of this SAG claim, Harm also claims that the testimony of F.M.G.'s mother (describing F.M.G. as a little girl with pigtails) was not credible. But as discussed above, we defer to the trier of fact on issues of witness credibility. *Ague-Masters*, 138 Wn. App. at 102.

[5] In Harm's SAG claim 8, Harm, like his appellate counsel, also appears to challenge the sufficiency of the evidence with respect to his second degree and third degree rape convictions. To the extent that Harm is doing so, we have addressed these claims above.

will not consider SAG claims that fail to inform us of the nature and occurrence of the alleged error).

In SAG claim 3, Harm claims that an individual who did not testify at trial could have proved that F.M.G. consented to Harm's conduct. Similarly, in SAG claim 7, Harm claims that he received ineffective assistance of counsel because his trial counsel did not pursue evidence of Harm's apartment lease agreement, which he claims would have undermined F.M.G.'s credibility. However, both of these claims rely on evidence outside of our record, so the record is insufficient to consider them. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

C. SAG CLAIMS 4 AND 5: JUDICIAL BIAS

In SAG claims 4 and 5, Harm essentially claims he was prejudiced by judicial bias. In SAG claim 4, Harm claims that the trial court violated the Code of Judicial Conduct by making inappropriate and biased assessments of Harm's character during a pretrial *Knapstad*[6] hearing. We do not have a sufficient record to consider this claim.

Several months before trial, Harm filed a *Knapstad* motion to dismiss the two first degree child rape counts. Although Harm's *Knapstad* motion and the State's response are in our record, our record does not contain the transcript from any hearing on the *Knapstad* motion or any written ruling on the motion from the trial court. The appellant bears the burden of providing the reviewing court with a record adequate for review. *State v. Wade,* 138 Wn.2d 460, 464, 979 P.2d 850 (1999). We may decline to consider an alleged error if the appellant does not provide a complete record

---

[6] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

on a material issue. *Id.* at 465-66. Because Harm failed to provide the transcript of any hearing that occurred on his pretrial *Knapstad* motion, we decline to further consider this claim.

In SAG claim 5, Harm claims that the trial court made inappropriate assessments of Harm's character by summarizing Harm's actions as a "continued pattern of conduct" that was predatory. SAG at 5. To support this claim, Harm asserts that his relationship with F.M.G. was consensual and there is nothing in the record that shows that his relationship with F.M.G. was predatory. We disagree that the trial court's comments were error.

Contrary to Harm's assertions, the nature of their relationship was a component of the factual questions resolved by the jury as it weighed the evidence of F.M.G.'s allegations and Harm's defense that the relationship was consensual. The trial court's comments were rooted in a reasonable inference from the evidence at trial and the jury's verdict and, as such, were not indicative of bias. Harm's claim that the trial court's comments were improper lacks merit.[7]

## D. SAG CLAIM 6: VINDICTIVE PROSECUTION

In SAG claim 6, Harm claims that his convictions were the result of vindictive prosecution.

Prosecutorial vindictiveness occurs when the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights. *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006). A prosecution is "vindictive" only if it is designed to

---

[7] As part of this SAG claim, Harm also appears to claim that it was inappropriate for the trial court to sentence him for his rape convictions and his assault conviction from an unrelated case at the same time because doing so "sabotaged the truth and fairness for the defendant." SAG at 5. But Harm fails to provide any explanation as to why it was improper for the trial court to sentence him for both cases at the same sentencing hearing. RAP 10.10(c) (explaining that we will not consider SAG claims that fail to inform us of the nature and occurrence of the alleged error). Accordingly, this aspect of his claim is without merit.

penalize a defendant for invoking legally protected rights. *Id.* A defendant bears the burden of showing (1) actual vindictiveness, or (2) realistic likelihood of vindictiveness. *State v. Numrich*, 197 Wn.2d 1, 24, 480 P.3d 376 (2021).

Harm does not show vindictiveness, and we see nothing in our own review of the record that establishes any improper motive. We reject Harm's vindictive prosecution claim.

CONCLUSION

We affirm Harm's convictions for first degree child rape and second degree rape, but we reverse Harm's conviction for third degree rape. We also remand to the trial court to dismiss the third degree rape charge with prejudice and for resentencing. At resentencing, the trial court must meaningfully consider on the record the mitigating qualities of Harm's youth, impose a determinate sentence for his first degree child rape conviction, and not impose the VPA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

LEE, J.

22