**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

                    Respondent,

        v.

DARREN GENE,

                    Appellant.

DIVISION ONE

No. 82546-1-I

PUBLISHED OPINION

DWYER, J. — Darren Gene appeals from his conviction of rape in the second degree. He contends that insufficient evidence supported one of the alternative means upon which the jury could have based its verdict. Gene is correct. The Fourteenth Amendment[1] due process clause both requires that every element of a charged crime be proved beyond a reasonable doubt and guarantees a defendant the right to a unanimous jury verdict. Accordingly, to give effect to Gene's due process rights, we reverse the judgment and remand for further proceedings.

I

Darren Gene and K.M. had a "brother-and-sister-like friendship." During the summer of 2018, they "hung out almost all the time every weekend" together with a group of their friends. On the evening of August 29, 2018, Gene and two of his friends, Jesus Montano and Sedrick Hill, went to K.M.'s apartment. K.M.'s

---

[1] U.S. CONST. amend. XIV.

friend Rachel Charles was already present. The group used the hot tub in K.M.'s apartment complex, consumed alcohol, and listened to music. At some point during the evening, they went up to K.M.'s apartment and played a drinking game.

Eventually, K.M. began to feel unstable and sick. She went to the bathroom and began vomiting. Still feeling nauseous and dizzy, K.M. went to her bedroom to sleep. K.M. felt uncomfortable and nauseous in her bed, so she took a comforter and slept in a fetal position on the floor. At trial, K.M. testified that Gene assaulted her while she slept on the floor. Her description of the events included the following exchange with the prosecutor:[2]

> [K.M.:] I had the comforter wrapped around me, just over me. I had fallen asleep. I remember feeling it was a lot more comfortable than my bed so it was easier for me to fall asleep. I remember Gene coming -- trying to put his hands in my shorts, and --
> [PROSECUTOR:] [K.], would it help if I asked some questions?
> [K.M.:] Yes, please.
> [PROSECUTOR:] Okay. When you went to sleep, who was in the room?
> [K.M.:] Rachel and Gene.
> [PROSECUTOR:] When you went to sleep?
> [K.M.:] Just Rachel.
> [PROSECUTOR:] Okay. At some point did that change?
> [K.M.:] Yes.
> [PROSECUTOR:] How did it change? Who came in?
> [K.M.:] Gene came in.
> [PROSECUTOR:] When he came in did you see him come in or were you asleep?
> [K.M.:] I was asleep.
> [PROSECUTOR:] Okay. How did you know he was there the first time you knew he was there? Let me ask a different question. When you were asleep, did you feel anything on your body?
> [K.M.:] I did.
> [PROSECUTOR:] Okay. What did you feel?
> [K.M.:] I felt somebody trying to put their hands inside of my shorts.

---

[2] We include K.M.'s complete testimony regarding the rape because Gene challenges the sufficiency of the evidence with regard to the use of forcible compulsion and K.M.'s testimony is the only evidence on this question.

[PROSECUTOR:]  Was the person able to put their hands inside your shorts?

[K.M.:]  No. They struggled.

[PROSECUTOR:]  Okay. Did that change?

[K.M.:]  Yes.

[PROSECUTOR:]  How did that change?

[K.M.:]  I was moved from the fetal position onto my back.

[PROSECUTOR:]  When you say you were moved, what do you mean?

[K.M.:]  I was pulled from my ankles.

[PROSECUTOR:]  How were you pulled from your ankles?

[K.M.:]  Pulled away from the bed, grabbed.

[PROSECUTOR:]  So you felt hands on your ankles?

[K.M.:]  I felt hands first on my knees pulling my legs apart, and then moving me down.

[PROSECUTOR:]  At that point, [K.], did you -- were you fully awake and conscious?

[K.M.:]  No.

[PROSECUTOR:]  Did you feel like you had control over your body?

[K.M.:]  No.

[PROSECUTOR:]  After your ankles were pulled down, what happened next?

[K.M.:]  I felt fingers inside of my vagina.

[PROSECUTOR:]  [K.], did you still have your shorts and your bathing suit bottom on at that point?

[K.M.:]  No.

[PROSECUTOR:]  The first time?

[K.M.:]  The first time? I don't remember.

[PROSECUTOR:]  Is it accurate that in your statement to law enforcement you indicated you did have your shorts and bathing suit bottoms on the first time?

[DEFENSE COUNSEL:]  I'm going to object to leading.

THE COURT:  Sustained. So ladies and gentlemen, when I sustain an objection, that means that the attorney will ask a different question. [Prosecutor], you may proceed.

[PROSECUTOR:]  So [K.], the first time you felt fingers penetrate your vagina did you have bathing suit and shorts on?

[K.M.:]  The first time, yes.

[PROSECUTOR:]  Was there more than one time?

[K.M.:]  Yes.

[PROSECUTOR:]  When you felt fingers in your vagina, how was your body positioned?

[K.M.:]  I was on my back with my legs spread open.

[PROSECUTOR:]  The person who was using their fingers on you, where were they positioned?

[K.M.:]  In front of me.
[PROSECUTOR:]  So if you were on your back, were they above you or next to you?
[K.M.:]  They were above me, in between my legs.
[PROSECUTOR:]  What do you mean between your legs?
[K.M.:]  Above in front of me and in between my legs because my legs were spread open.
[PROSECUTOR:]  Did you spread your legs open or how did your legs get spread open?
[K.M.:]  They were spread apart by Gene.
[PROSECUTOR:]  How did he do that?
[K.M.:]  With his hands by moving me away from my bed.
[PROSECUTOR:]  Where on your legs did he push in order to spread your legs apart?
[K.M.:]  My thighs, in between my thighs.
[PROSECUTOR:]  When the person was putting his fingers inside your vagina did you hear any noises, sounds or statements?
[K.M.:]  I just heard, like, groaning. No statements, no words.
[PROSECUTOR:]  How close was the person to you when they put their hand down your pants and penetrated your vagina?
[K.M.:]  Very close.
[PROSECUTOR:]  At that point did you have your eyes open?
[K.M.:]  No.
[PROSECUTOR:]  Okay. How do you know that person was very close?
[K.M.:]  Because they were touching me. They were in front of me.
[PROSECUTOR:]  Talking about your senses, did you feel anything on your body other than penetration of your vagina?
[K.M.:]  Just a body in between my legs.
[PROSECUTOR:]  [K.], were you able to respond?
[K.M.:]  No.
[PROSECUTOR:]  Why not?
[K.M.:]  Because I was unconscious. I was blacked out drunk from earlier.
[PROSECUTOR:]  You said "blacked out." What does that mean?
[K.M.:]  Just being too drunk to focus, to know what's going on.
[PROSECUTOR:]  At some point did the person who was putting their fingers inside of you stop?
[K.M.:]  Yes.
[PROSECUTOR:]  Okay. Could he -- could that person have stopped everything at that point?
[DEFENSE COUNSEL:]  Objection. Speculation.
THE COURT: Sustained.
[PROSECUTOR:]  Did that person stop the behavior at that point?
[K.M.:]  No.

[PROSECUTOR:]  Instead of stopping the behavior, what happened next?

[K.M.:]  I was under the blanket completely covered in it, and so was he. I remember hearing him pull off his shorts, rip mine off, and then put his penis inside of my vagina, all while being over and front and on top of me.

[PROSECUTOR:]  So [K.], you said he ripped off your shorts. Did you see any tears in the shorts?

[K.M.:]  No.

[PROSECUTOR:]  Did you see any tears in the bikini bottoms?

[K.M.:]  No.

[PROSECUTOR:]  Okay. Why were there no tears in those?

[K.M.:]  They slip on and off. I didn't need to pull any strings or button any buttons.

[PROSECUTOR:]  When you say "rip off," do you mean literally the fabric ripped?

[K.M.:]  No. Pulled off.

[PROSECUTOR:]  Okay. Why did you use the term "rip"?

[K.M.:]  Because it was forceful.

[PROSECUTOR:]  [K.], in a normal sexual encounter -- strike that. Was your body physically ready to have an object like a penis penetrate it?

[K.M.:]  No.

[PROSECUTOR:]  Why not?

[K.M.:]  Because I wasn't aroused. I wasn't awake.

[PROSECUTOR:]  How did it feel when his penis penetrated your vagina?

[K.M.:]  Rough, uncomfortable.

[PROSECUTOR:]  Did it hurt?

[K.M.:]  A little bit.

[PROSECUTOR:]  Do you need a break? [K.], were you able to stop him from putting his penis inside your vagina?

[K.M.:]  No.

[PROSECUTOR:]  What did he do when his penis was in your vagina?

[K.M.:]  It was obviously uncomfortable for the both of us so he pulled out to finger me again.

[PROSECUTOR:]  So going back for a minute. We're going to focus on the penile penetration part for a second. At that point were you able to respond?

[K.M.:]  No.

[PROSECUTOR:]  Were you able to get him off of you?

[K.M.:]  No.

[PROSECUTOR:]  Did he stop?

[K.M.:]  Yes.

[PROSECUTOR:] Let's talk about the third time you were sexually assaulted that night. What was the third incident?

[K.M.:] He had his fingers in my vagina.

[PROSECUTOR:] Did he make any noise when he did that?

[K.M.:] I don't remember.

[PROSECUTOR:] Were you able to respond?

[K.M.:] No.

[PROSECUTOR:] How did the third incident end, [K.]?

[K.M.:] I began to come out of the fog that I was in of being unconscious and realized that it wasn't in my head, it was happening, and I got scared. I -- he pulled away, and I took the chance to pull myself back into the fetal position and tuck myself into my blanket.

[PROSECUTOR:] Your Honor, at this time the state offers for a demonstrative exhibit, Exhibit No. 42.

THE COURT: The exhibit has previously, I believe, been admitted as a demonstrative exhibit so you may proceed.

[PROSECUTOR:] [K.], I'm going to have you show us how you wrapped the blanket around yourself.

[K.M.:] So --

[PROSECUTOR:] Your Honor, if I could have the witness step down so she can show the jury how she wrapped the blanket around herself.

THE COURT: You may.

[PROSECUTOR:] [K.], why don't you stand right out here.

[K.M.:] I was laying on my -- against my bed with the blanket over me, and I was in the fetal position with the corners tucked in.

[PROSECUTOR:] And for the record you're demonstrating tucking the corners around both of your knees so the wrapped blanket is actually fully wrapped around your body.

[K.M.:] Yeah. It's a big enough blanket.

[PROSECUTOR:] So and where was the defendant when you wrapped the blanket all the way around your knees?

[K.M.:] Outside of the blanket on -- in front.

[PROSECUTOR:] Okay. Why did you wrap the blanket all the way around your knees?

[K.M.:] Because I didn't want him to get to me.

[PROSECUTOR:] Thank you, [K.]. All right. [K.], after you wrapped the blanket around yourself and you sort of -- I guess you said came out of your fog, what happened next?

[K.M.:] I was laying under the blanket. He was trying to pull it out from under me, but because I was able to wrap myself in the blanket, I held onto it with both my weight, the weight of my body, and my hands, and he tried multiple time[s] to pull it out from under me, and he -- I heard him groan and get frustrated so I got up onto my bed and started screaming "Get out. Get the fuck out. Leave."

[PROSECUTOR:]  When you say "screaming," how loud were you?

[K.M.:]  I was screaming at the top of my lungs. I woke up my roommate.

[PROSECUTOR:]  And your roommate was in a separate bedroom?

[K.M.:]  Yes.

[PROSECUTOR:]  Why were you screaming to get out?

[K.M.:]  Because I was angry that he was groaning and frustrated that he couldn't get to me, and I didn't think it was okay.

[PROSECUTOR:]  So [K.], I want to make sure we have a clear identification here. Who were you screaming at?

[K.M.:]  At Gene.

[PROSECUTOR:]  Okay. And that's the defendant Darren Gene.

[K.M.:]  Yes.

[PROSECUTOR:]  Okay. When he was in your bedroom, what was he wearing?

[K.M.:]  Shorts.

[PROSECUTOR:]  Okay. Did he have a shirt on when you saw him when you woke up and were screaming?

[K.M.:]  No.

[PROSECUTOR:]  [K.], did -- going back to the penile penetration, did he ejaculate?

[K.M.:]  No.

[PROSECUTOR:]  Okay. How do you know?

[K.M.:]  Because it didn't go any further than trying to put it inside and not -- and pulling out to finger me again.

[PROSECUTOR:]  Does that have anything to do with your lack of arousal?

[K.M.:]  Yeah.

[PROSECUTOR:]  After you were assaulted what were you wearing?

[K.M.:]  I was just wearing my tank top and bathing suit top.

[PROSECUTOR:]  Did you have anything on below your waist?

[K.M.:]  No, besides the blanket I was holding.

[PROSECUTOR:]  So [K.], what did you do next?

[K.M.:]  So after I screamed it woke Rachel up. Rachel got up immediately, got them out, got Gene out and got Sedrick and Jesus out as well. I took the chance to run into my closet where I also have my undergarments. I pulled on a pair of underwear and a pair of leggings I had so I would have clothes on after I ran back into bed, and Rachel came back in to comfort me.

[PROSECUTOR:]  At that point, [K.], how intoxicated did you feel?

[K.M.:]  Very. I still wasn't sure -- I was intoxicated. I wasn't sure what was going on I was so intoxicated.

Gene was charged with three counts of rape in the second degree. Counts 1 and 3 alleged digital penetration of K.M's vagina by forcible compulsion or while K.M. was incapable of consent. Count 2 alleged penile penetration of K.M's vagina by forcible compulsion or while K.M. was incapable of consent. A jury found Gene not guilty of Counts 1 and 3, and guilty of Count 2.

Gene appeals.

II

Gene contends that insufficient evidence supported his conviction of rape in the second degree, as it was charged. Because the record does not contain sufficient evidence that Gene committed rape by one of the charged alternatives, we agree.

Under both the United States and Washington Constitutions, a criminal defendant is entitled to a unanimous jury verdict. Ramos v. Louisiana, ___ U.S. ___, 140 S. Ct. 1390, 1397, 206 L. Ed 2d 583 (2020); State v. Woodlyn, 188 Wn.2d 157, 162-63, 392 P.3d 1062 (2017). When a defendant is charged with an alternative means crime, the jury need not be unanimous as to the means by which the crime was committed, so long as there is sufficient evidence to support each of the alternative means. State v. Owens, 180 Wn.2d 90, 95-96, 323 P.3d 1030 (2014). But "[w]hen one alternative means of committing a crime has evidentiary support and another does not, courts may not assume the jury relied unanimously on the supported means." Woodlyn, 188 Wn.2d at 162. If "it is impossible *to rule out the possibility* the jury relied on a charge unsupported by

sufficient evidence," reversal is required. State v. Wright, 165 Wn.2d 783, 803 n.12, 203 P.3d 1027 (2009).

A

Gene contends that a constitutionally insufficient quantum of evidence supports his conviction for rape in the second degree by means of forcible compulsion.[3]  Rape in the second degree pursuant to RCW 9A.44.050 is an alternative means crime.  See State v. Ortega-Martinez, 124 Wn.2d 702, 705, 881 P.2d 231 (1994).  On the count of which he was convicted, Gene was charged with two alternative means, as follows:

> COUNT 2 - RAPE IN THE SECOND DEGREE, RCW 9A.44.050(1)(a) and/or (1)(b) - CLASS A FELONY:
>
> In that the defendant, DARREN GENE, in the State of Washington, on or between August 29, 2018 and August 30, 2018, in an incident separate and distinct from any other count, did engage in sexual intercourse with K.M. (10/05/95), by forcible compulsion and/or when the victim was incapable of consent by reason of being physically helpless or mentally incapacitated.  The sexual intercourse alleged for this count was penile penetration of K.M.'s vagina.

The jury was instructed that to convict Gene of rape in the second degree, it "need not be unanimous as to which of [the] alternatives [by forcible compulsion] or [when K.M. was incapable of consent by reason of being physically helpless or mentally incapacitated] has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt."  Jury Instruction 14.

---

[3] Gene does not challenge the sufficiency of the evidence supporting his conviction for rape in the second degree by means of engaging in sexual intercourse with K.M. while she was incapable of consent.

After a verdict, the relevant question when reviewing a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201.

The essential elements of rape in the second degree by forcible compulsion are set forth in RCW 9A.44.050(1)(a):

> A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [b]y forcible compulsion.

"Forcible compulsion" is defined by statute:

> "Forcible compulsion" means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped.

RCW 9A.44.010(6).

In other words, for there to be forcible compulsion in the context of rape in the second degree, there must have been force that was "directed at overcoming the victim's resistance and was more than that which is normally required to achieve penetration." State v. McKnight, 54 Wn. App. 521, 528, 774 P.2d 532

(1989). "'Forcible compulsion is not the force inherent in any act of sexual touching, but rather is that used or threatened to overcome or prevent resistance by the [victim].'" State v. Corey, 181 Wn. App. 272, 277, 325 P.3d 250 (2014) (alteration in original) (internal quotation marks omitted) (quoting State v. Ritola, 63 Wn. App. 252, 254-55, 817 P.2d 1390 (1991)). The resistance that forcible compulsion overcomes need not be physical resistance, but it must be reasonable resistance under the circumstances. McKnight, 54 Wn. App. at 528-29 (reasonable juror could find forcible compulsion when defendant pushed 14-year-old victim down and disrobed her over her requests that the advances stop).

Here, viewing the evidence in the light most favorable to the prosecution, K.M. did not resist the penetration of her vagina by Gene's penis. K.M.'s testimony, set forth in full above, was that she was unconscious or unable to respond when Gene engaged in sexual contact with her. Because K.M. was unable to respond, she could not resist the penile-vaginal assault and there was no resistance for Gene to overcome.[4]

The State asserts that evidence of Gene positioning K.M.'s body and forcefully removed her clothing is evidence of force overcoming K.M.'s resistance, citing McKnight. In so contending, the State misapprehends the holding of McKnight. In McKnight, we explained that acts that overcome a victim's verbal resistance may constitute forcible compulsion:

> Reasonable minds can differ as to whether the acts of slowly pushing [the victim] to a prone position and then removing her

---

[4] That K.M. successfully resisted Gene's later attempt to rape her yet again is of no moment. Gene was not charged with any attempt crime.

11

> clothes *in response to the victim's requests that the advances stop* manifest a degree of force greater than that which is inherent in the act of intercourse. A reasonable juror could, however, infer from the evidence that these were acts of force over and above what is necessary to achieve intercourse and that these acts were employed to overcome [the victim]'s resistance.

McKnight, 54 Wn. App. at 528 (emphasis added).

Here, K.M. was unconscious or unable to voice any such resistance. The circumstance that K.M. slept in—clothed and on her side—did not constitute resistance to a sexual assault that K.M. had no reason to anticipate. Cf. Ritola, 63 Wn. App. at 254-55 (insufficient evidence of forcible compulsion when juvenile suddenly grabbed and squeezed female camp counselor's breast before removing his hand because, as camp counselor was too surprised to resist, there was no resistance to overcome). The force exerted by Gene was not employed to overcome any resistance posed by K.M. Corey, 181 Wn. App. at 277.

Rather, the force Gene used to move K.M.'s body into a prone position, separate her legs, and remove her shorts was nothing more than the force "needed to bring about sexual intercourse or sexual contact." Ritola, 63 Wn. App. at 254. When K.M. was able, she did resist, both by wrapping herself in a blanket and by yelling at Gene to "Get out. Get the fuck out. Leave." This resistance was successful, and Gene did not overcome it.[5]

Under these circumstances, no reasonable juror could find beyond a reasonable doubt that Gene resorted to forcible compulsion to engage in penile penetration of K.M.'s vagina. Thus, a constitutionally insufficient quantum of

---

[5] During closing argument, the prosecutor indicated that Gene penetrated K.M. after her resistance began. This statement to the jury was not supported by the evidence adduced at trial.

evidence supports Gene's conviction for rape in the second degree by means of forcible compulsion.

B

Gene concedes that he may be retried on the alternative means that we have not determined to be unsupported by sufficient evidence—specifically, that Gene engaged in sexual intercourse with K.M. while she was incapable of consent by reason of being physically helpless or mentally incapacitated.[6]  We accept this concession.  "'[A] defendant in such a position is entitled only to a new trial, not an outright acquittal, unless the record shows the evidence was insufficient to convict on any charged alternative.'" State v. Garcia, 179 Wn.2d 828, 844, 318 P.3d 266 (2014) (quoting Wright, 165 Wn.2d at 803 n.12).

However, the trial court may not retry such a defendant on the alternative means for which we have held there is insufficient evidence.  Garcia, 179 Wn.2d at 844.  Accordingly, retrial is limited to the alternative means which was supported by sufficient evidence.  See State v. Green, 94 Wn.2d 216, 234-35, 616 P.2d 628 (1980) (remanding case for new trial on one offense alternative when there was insufficient evidence of another that was charged, and it was impossible to know whether the jury had unanimously determined guilt based on the first).

Thus, the trial court may retry Gene for rape in the second degree by means of engaging in sexual intercourse with a person who is incapable of consent by reason of being physically helpless or mentally incapacitated.

---

[6] Gene made this concession in oral argument.

Reversed.

_____
Dwyer, J.

WE CONCUR:

_____    _____
Chun, J.                         Dwyer, J.